## CARR v. STATE.

### Opinion delivered February 21, 1921.

1. HOMICIDE—GENERAL REPUTATION OF DECEASED.—Where a plea of self-defense was interposed in a murder case, and it became a material issue whether defendant or deceased was the aggressor, the general reputation of each for peace and quiet was admissible as tending to show which was the probable aggressor.

2. WITNESSES—CROSS-EXAMINATION OF CHARACTER WITNESS.—A character witness who testified to deceased's good reputation could, on cross-examination, be interrogated concerning specific acts of violence on the part of the deceased within the personal knowledge of the witness, to test the soundness of the statement of the witness tending to establish the deceased's good character, where such acts of violence were of such a notorious and public nature within themselves as would tend to establish general reputation.

Appeal from Mississippi Circuit Court, Osceola District; *R. E. L. Johnson,* Judge; reversed.

*George L. Teat* and *J. T. Coston,* for appellant.

1. The court erred in holding that defendant had no right to ask the character witnesses for the State on cross-examination as to specific acts of violence on the part of deceased.

2. The argument of Hon. H. H. Rogers, counsel for the State, was prejudicial and improper.

3. The trial judge in overruling objections to leading questions intimated to the jury his opinion that de-

fendant should be convicted. 140 S. W. 282; 44 Ark. 120; 144 S. W. 196; 159 *Id.* 195-6; 67 *Id.* 756-7; 85 *Id.* 237; 11 Tex. App. 378. See, also, 134 S. W. 927; 152 *Id.* 992; 67 Ark. 117-18. It was error to deny the right to cross-examine the witnesses. 67 Ark. 117; 19 So. Rep. 139; 7 *Id.* 193; 45 Pac. 862; 32 N. E. Rep. 306; 35 So. Rep. 667.

The remarks of the court were improper and prejudicial, and only a reversal will cure the error. 58 Ark. 368; 207 S. W. 435-6.

*J. S. Utley,* Attorney General, and *Elbert Godwin,* Assistant, for appellee.

1. The remarks of H. H. Rogers for the State were not improper nor prejudicial, and on objection the jury were properly told to disregard them, which cured any seeming error.

The testimony set out in the affidavit can not be considered, because not set out in the bill of exceptions. 2 R. C. L. 143. The fact that the court sustained the objections to any improper remarks of counsel and instructed the jury to disregard them cured any error. 74 Ark. 256; 100 *Id.* 437; 86 *Id.* 600. See, also, 74 Ark. 256.

2. There was no error in the ruling of the court as to the admission of evidence as to character, etc. 29 Ark. 131; 3 Cyc. of Ev. 49; 10 R. C. L. 953; 3 Enc. of Ev. 49-50.

Exceptions to testimony or the ruling of the court should be *specific,* not general. General objections will not be sustained on appeal. 2 R. C. L. 94-5.

3. The remarks of the court in overruling the objections to testimony were not improper nor prejudicial. 58 Ark. 368 and 207 S. W. 436, are not in point.

4. The proof here shows murder in the first degree and hence the jury must have given defendant the benefit of every doubt, and there is no error in the court's rulings.

HUMPHREYS, J. Appellant was indicted in the Osceola District of the Mississippi Circuit Court for murder in the first degree, for killing George McCulloch, on the 13th day of August, 1920, with a club, to which he interposed the plea of self-defense. Upon the trial, he was convicted of murder in the second degree and sentenced to imprisonment for twenty-one years. From the judgment of conviction, an appeal has been duly prosecuted to this court.

At the time of the tragedy, appellant and the deceased resided at Pride's Spur upon the same farm. They had moved from Mississippi to that place in December, 1919. They had a quarrel the day before the killing.

The evidence adduced by the State was, in substance, to the effect that appellant claimed deceased had called him a vile name, for which he intended to kill him, explaining that he intended to walk up behind him, knock him down, take his gun away from him and kill him; that, on the following day, when the freight train came in, one hundred pounds of ice was put off the ice car for the deceased, and three hundred pounds for appellant; that appellant appeared on the scene first, and, while talking to the boy in charge of the ice car, the deceased appeared, whereupon appellant went away; that he soon returned, and, while the deceased was stooping over for his ice, appellant struck him on the back of the head with a pick handle, and, as the deceased started to fall, he pushed him over on the ground; that, while the deceased was attempting to get up, appellant struck him on the forehead and again knocked him down and struck him a third lick after he fell; that he then got on him, searched his pockets but found nothing; that a third party was prevented from interfering by appellant's son, who drew a pistol upon him; that, about this time, the wife of the deceased, who witnessed the tragedy, ran up and caught the club, and, when her husband got up, assisted him to their home where he became unconscious and died between three and four o'clock the next morning from the effect of the blow inflicted upon him by appellant.

The evidence adduced by appellant was, in substance, to the effect that, the day before the fatal encounter, a dispute, initiated by deceased, resulted in an attempt by the deceased to attack appellant with an ax, which attack was prevented by J. M. Black and the wife of deceased, whereupon the deceased went into his house threatening appellant as he went, and, against the entreaties of his wife, returned in a moment and, from the porch, pointed his finger toward appellant and said: "I will get you yet;" that, on the next day, while appellant was standing near the train, the deceased came up, ran his hand in his pocket and remarked that he had told appellant he was going to kill him; that appellant grabbed a pick handle, struck deceased twice in the forehead, and, when he fell, appellant, after laying the stick down, got on the deceased, searched his pockets and found a pair of steel knucks, which he gave to a by-stander, and then voluntarily retired from the conflict; that deceased arose and walked home, a distance of one hundred yards, with his wife; that he died fourteen hours thereafter from a fracture of the skull in the rear, caused by a blow on the forehead.

In the course of trial, exceptions were saved by appellant to certain arguments made by Honorable H. H. Rogers, who was assisting in the prosecution of the case, and to a statement of the court in overruling an objection interposed by appellant's counsel to a question of the prosecuting attorney, also to the ruling of the court to the effect that appellant had no right to ask the character witness for the State, on cross-examination, as to specific acts of violence on the part of the deceased. Appellant attacked the reputation of the deceased for peace and quietude. The State then introduced a witness to show that the reputation of the deceased was good. Appellant attempted, on cross-examination of the witness, to elicit his knowledge of acts of violence on the part of the deceased indicating otherwise. The court denied appellant this right. In order to make up the record upon this point, the jury was instructed to retire, and appellant offered to ask and prove by the witness:

"1. That George McCulloch, in the last three years that he lived in Mississippi, had at least twelve fights, and paid a fine for each one of them.

"2. That he had many quarrels and was boisterous toward certain people and overbearing in his manner toward them.

"3. That he had many other difficulties.

"4. That he had a fight with Rose Gladen, Henry Gladen, who was constable of the district in Choctaw County, Mississippi, and that Gladen went there to collect taxes from a negro on his place, and that he resented it and beat him up, and they were separated by the mayor of the town and he paid a fine for it.

"5. That he had a personal difficulty with George Edermon, who was in the timber business, about a settlement in regard to some crossties.

"6. That he had a quarrel with Smiley Smith, and ran him off the premises.

"7. That he had a fight with Charlie Thompson and beat him up and paid a fine for that.

"8. That he had a difficulty with the town marshal, who attempted to arrest him, and it arose over a fight with another man; Early Hunt was the marshal.

"9. Also to show that he killed a negro and put the negro in the stable where the mule was, and circulated the report that the negro had been kicked to death by the mule."

The plea of self-defense was interposed, so the question as to whether the appellant or deceased was the aggressor became a material issue. The general reputation of each for peace and quiet, therefore, was admissible as tending to show which was the probable aggressor. The question presented by this record is whether a character witness, who testified to the good reputation of the deceased, could, on cross-examination, be interrogated concerning specific acts of violence on the part of the deceased within the personal knowledge of the witness, to test the soundness of the statement of the witness tending to establish the good character of the deceased. This court announced the doctrine, in the case of *St. L., I. M. & S. Ry.*

*Co.* v. *Stroud,* 67 Ark. 112, that "there could be no doubt
that when a witness is put on the stand to attack or defend
character, he can only be asked, on the examination in
chief, as to the general character of the person whose
character is in question, and he will not be permitted to
testify to particular facts, either favorable or unfavora-
ble to such a person; but when the witness is subject to
cross-examination, he may then be asked, with a view to
test the value of his testimony, as to particular facts."
The learned Attorney General contends that this doctrine
has relation only to the report of specific acts of violence
on the part of the one whose character is in question, in-
consistent with the statements of a character witness,
and has no relation to particular acts of violence within
the personal knowledge of the witness, and that, because
the proof offered reached to the personal knowledge of
the witness only, the offered evidence was properly ex-
cluded. We think the form of the question immaterial
in the instant case, because the very nature of the spe-
cific acts of violence offered to be established by the wit-
ness were of such a notorious and public nature within
themselves as would tend to establish general reputation.
Especially is that true in view of the great number of
violent acts offered to be proved, covering so short a
period of time. We think the court committed prejudicial
error in excluding the evidence offered on the cross-
examination of the character witness.

It is unnecessary to discuss the other assignments of
error, as they will not likely recur on a new trial of the
cause.

For the error indicated, the judgment of conviction
is reversed and the cause remanded for a new trial.