BRIDGES *v.* STATE.

Opinion delivered March 26, 1928.

1. HOMICIDE—SUFFICIENCY OF EVIDENCE.—Evidence *held* sufficient to sustain a conviction of murder in the second degree.

2. CRIMINAL LAW—OPENING STATEMENT OF PROSECUTING ATTORNEY.— In a prosecution for murder, the opening statement of the prosecuting attorney that defendant's father told deceased that defendant would kill him, not subsequently supported by testimony, was not prejudicial where no ruling was asked concerning the statement and defendant was convicted of murder in the second degree only.

3. HOMICIDE—EVIDENCE OF CONVICTION OF DECEASED FOR ASSAULT.—In a prosecution for murder, in which defendant claimed that he acted in self-defense, it was not error to exclude the certified copy of the record offered to prove deceased's conviction for assault by shooting, as it involved a specific act of violence and not a mere general reputation of deceased.

4. HOMICIDE—REPUTATION OF DECEASED.—Where the testimony leaves it in doubt as to who was the aggressor, defendant may show deceased's reputation for peace and quietude, but he may not prove the evidence of specific acts of bad conduct on deceased's part.

5. CRIMINAL LAW—ADMISSIBILITY OF SPECIFIC ACTS OF BAD CONDUCT. —Where, in the murder prosecution, the witness failed to testify as to deceased's general reputation as to peace and quietude, but was called to prove only a specific act which was incompetent, cross-examination by the prosecuting attorney did not render admissible such rejected testimony of the witness, since there was no occasion to test the credibility of the witness.

Appeal from Miller Circuit Court; *James H. McCollum,* Judge; affirmed.

*Will Steel, Dexter Bush* and *John N. Cook,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

SMITH, J.   Appellant, Kenneth Bridges, was tried under an indictment charging him with the crime of murder in the first degree, alleged to have been committed by shooting and killing one Hiram Kirby. He was found guilty of murder in the second degree, and given a sentence of twenty-one years in the penitentiary.

L. R. Bridges, appellant's father, had been engaged in the mercantile business, and deceased owed him a small account.  In an effort to collect this account L. R. Bridges went to the home of Kirby, who became incensed at Bridges, who is an old man and a cripple, and struck Bridges a blow with a rock, which rendered Bridges insensible.   Robert Vogel accompanied Bridges to the Kirby home, to which place they drove in an automobile. After striking Bridges, Kirby went hurriedly on towards his home, and Vogel, thinking Kirby had gone after a gun, drove rapidly away without waiting to turn his car in the direction they wished to go.

Appellant was advised, about eleven o'clock that night, of what had happened, by Paul Hastings.  Prentice Smith spent the night with appellant, and the next morning appellant, after furnishing Smith a shotgun, went to his father's home, where he procured a rifle. According to the testimony in appellant's behalf, he and Smith, who is a young man about nineteen years old, planned to go hunting, and they had their guns for this purpose, but appellant decided he would first go to Kirby's home and find out Kirby's version of the trouble with appellant's father.   The two walked to the Kirby home, and were there told that Kirby had gone to the home of a Mr. Pate, who lived a mile and a half away. They started to Pate's home, and had gone about half a mile, when they met Kirby.  No one saw the shooting or

heard what immediately preceded the killing, except appellant and Smith, and, according to their version, appellant asked Kirby why he had struck appellant's father. Kirby became angered, and dropped a sack of potatoes which he had in his hand, and ran his hand into the side of his overalls as if he intended to draw a weapon, and started towards appellant. Smith immediately fired both barrels of his shotgun, but, as Kirby did not fall, and kept advancing, appellant fired three shots with his rifle. Several persons heard the shooting, and one witness placed the number of shots as high as ten. When Kirby was found he had no weapons of any kind on his person.

The testimony is therefore amply sufficient to sustain the verdict returned by the jury.

In the opening statement the prosecuting attorney stated that "old man Bridges (appellant's father) told Hiram Kirby that his son Kenneth would kill him." An objection to this statement was overruled, and that action is assigned as error. The testimony did not show that this statement was made, but the attention of the court was not called to that fact, and no additional ruling was made or called for concerning the statement of the prosecuting attorney. Evidently the purpose of this statement was to show that there had been deliberation and premeditation, and that the homicide had thereby been raised to the grade of murder in the first degree. The statement is not one which would have been incompetent under any and all circumstances, and appellant was not convicted of murder in the first degree. It may be said here, as was said in the case of *Ragsdale* v. *State,* 132 Ark. 210, 200 S. W. 802, that: "It is true the statement contained matter not subsequently proved, but there is nothing to show that it was made in bad faith. The matters set forth in the statement were not foreign to the issue, and might have been offered in proof. There was no manifest abuse in the exercise of the court's discretion in permitting the statement."

Appellant offered testimony to the effect that deceased was a turbulent and dangerous man, and on the cross-examination of the witnesses who gave this testimony the prosecuting attorney asked if these witnesses had ever known deceased to shoot or kill any one, and they answered that they had not. Appellant then offered to prove that deceased had been charged and convicted on April 6, 1927, in the municipal court of Texarkana, of an assault by shooting at a woman, and a certified copy of the record of that court was offered in evidence. The court excluded this testimony, and that ruling is assigned as error.

There was no error in this ruling, as the reputation of the deceased was a collateral matter, which could be shown only as a circumstance bearing on the question as to who was the probable aggressor in the fatal encounter, for it is as much a violation of the law to kill a bad man as it is to kill a good one. But, where the testimony leaves in doubt the question as to who was the aggressor, defendant may show the reputation of the deceased for peace and quietude as a circumstance having some probative value as to who was probably the aggressor when the killing involved at the trial occurred; but this proof must be made by showing the general reputation of the deceased in this respect, and not by proof of specific acts of bad conduct. Underhill on Criminal Evidence (3 ed.), § 504; *Jett* v. *State,* 151 Ark. 439, 236 S. W. 621; *Pope* v. *State,* 172 Ark. 61, 287 S. W. 747.

It is argued that the cross-examination by the prosecuting attorney of the witnesses made the rejected testimony both admissible and necessary, as the character witnesses knew only the deceased's general reputation without knowing anything about specific acts of violence. We do not think so. The witness who offered in evidence the record of conviction of deceased in the municipal court did not testify as to the general reputation of the deceased, but was called to prove only a specific act of violence, and such testimony is not competent.

In the case of *Woodard* v. *State,* 143 Ark. 404, 226 S. W. 124, it was said:

"The rule applicable to the cross-examination of witnesses who testify as to reputation is stated in 3 Enc. of Ev., p. 49, as follows: 'It is generally held that such a witness may be asked on cross-examination as to an existence of particular facts, vices, or associations of the other persons inconsistent with the reputation attributed to him by the witness, not for the purpose of establishing the truth of such acts, but to test the witness' credibility, and to enable the jury to ascertain the weight to be given to his testimony.' "

But, as we have said, this witness who was asked about the conviction in the municipal court did not offer to testify as to deceased's general reputation, and there was therefore no occasion to cross-examine him as to specific acts for the purpose of testing his credibility, and the offered testimony was therefore incompetent, and no error was committed in excluding it.

The court gave what might be called the usual charge in homicide cases, consisting of eighteen separate instructions, to all of which appellant objected, except instructions numbered 7 and 14. Instruction numbered 7 told the jury that appellant, to be justified, must have fired the fatal shot through fear of impending danger, and not in a spirit of revenge, and instruction numbered 14 defined a reasonable doubt as that term had been employed in other instructions.

Appellant requested twenty-six instructions, of which ten were given as requested and four were given as modified. To discuss the instructions given to which objection was made and those refused would require a restatement of the law of homicide in this State, which we think would serve no useful purpose, as all the questions discussed in the briefs have long been settled by numerous decisions of this court.

It must suffice to say that we have carefully reviewed these instructions, both those given and those refused, and we find that the court submitted appellant's theory

of self-defense under instructions which would have resulted in his acquittal had his version of the killing been accepted by the jury as true.

Upon a consideration of the whole case we find no error in the record, and the judgment will therefore be affirmed.