MARY PARDEE, Plaintiff, *v.* THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.

City Court of New York, Trial Term, Kings County, May 20, 1939.

*Heller & Heller [Louis B. Heller* of counsel], for the plaintiff.

*Solon Weit [Abraham Gruber* of counsel], for the defendant.

GOLDSTEIN, J. The facts are undisputed. The deceased voluntarily submitted to the extraction of three teeth from the right lower jaw. Several days after the last tooth was extracted a doctor was called, and it was discovered that as a result of the tooth extractions the deceased received an infection of streptococci which poisoned his system and caused his death about three weeks later.

The defendant denied liability on the ground that there was no element of accident in the death of the insured or in the facts and circumstances leading thereto.

It is true that the extraction of the teeth and the treatment following were, of course, purposeful and not accidental, but the infection was not the necessary or usual result of this purposeful act. It was extraordinary, unusual and very rare. The proof shows that the deceased was a strong, healty man, and the defendant does not claim that death resulted directly or indirectly from bodily or mental infirmity.

The defendant argues that since the deceased voluntarily submitted to the extraction of the teeth, death was not accidental.

If that construction is pursued logically, the phrase relied upon by the defendant may indeed be shorn of most of its force. Suppose, for example, a man enters upon a train intentionally, On the way it jerks and throws him down. He dies of a brain concussion. According to the defendant he would be barred from recovery because going on the train was not an accident. A jerk of the train is foreseeable and falling from the jerk is also not an uncommon occurrence. It was only the result of the jerk that was accidental and unexpected. Yet, should not that be called an "accidental" death? Many other instances can readily be posed which, to the layman, would be deemed "accidental, violent, and external," and yet, in a sense, were voluntarily caused. Indeed, some of the authorities, as they now stand, lend considerable support to the defendant's theory. (See, for example, *Appel* v. *Ætna Life Ins. Co.*, 86 App. Div. 83; affd., 180 N. Y. 514; *Gould* v. *Travelers Ins. Co.*, 244 App. Div. 274; affd., 270 N. Y. 584; *Barnstead* v. *Commercial Trav. Mut. Acc. Assn.*, 204 App. Div. 473. But, see *Lewis* v. *Ocean Acc. & G. Corp.*, 224 N. Y. 18; *McQueen* v. *Prudential Ins. Co. of America*, 143 Misc. 682; and *Schwartz* v. *Commercial Trav. Mut. Acc. Assn.*, 254 N. Y. 523.)

It is thus obvious that the question is not entirely free from doubt. "Drawing the line" in this class of cases is a most delicate task, for no greater burden should be cast upon the insurance company than it has undertaken or it has led the insured to believe it has undertaken. Since rates of insurance are, in theory at least, based upon the frequency of accidents insured against, it is only just that the scope of liability be carefully circumscribed. To enlarge that base beyond the terms of the policy increases the assumed risk without compensation to the company. On the other hand, the policyholder's rights must not be shorn by hypertechnical constructions of the policy. Thus, an insurance company may well claim that in many cases there is no death by accident, but merely heart failure, for no one is dead until his heart stops beating, and every death is, therefore, due to heart failure. The contributing effect of other factors is, however, in each case a question of fact. In this instance the jury determined that the deceased died primarily because of the infection.

I am, therefore, constrained to conclude that justice in this case required a determination by the jury of this perplexing question as one of fact. My conclusion is fortified by the decision of the Appellate Division of the First Department in *Loewenthal* v. *Commercial Trav. Mut. Acc. Assn.* (253 App. Div. 583). Since the opinion did not disclose all of the facts I have carefully read the printed record on appeal. In that case the deceased also had

several teeth extracted; blood poisoning set in and the insured died as a result of said poisoning. There was no proof in that case as to the manner in which this septic poisoning set in or how it was caused. The proof simply showed that before the teeth were extracted neither the teeth nor the gums were infected, but after the teeth were extracted this infection set in. The case went to the jury but the jury was unable to agree on a verdict and the trial court dismissed the complaint. The Appellate Division reversed the judgment of the court below and said: " The evidence presented an issue of fact as to whether the insured died as a result of an infection following the extraction of teeth, which the jury could have found were not previously infected, or whether he died as the result of the heart disease from which he suffered." (See, also, *International Travelers' Assn.* v. *Francis,* 119 Tex. 1; 23 S. W. [2d] 282; *Hortons* v. *Travelers' Ins. Co.,* 45 Cal. App. 462; 187 P. 1070.)

In the case at bar this court, in its charge to the jury, submitted to it for its deliberation the very question involved in the *Loewenthal* case (*supra*). The jury resolved the question in favor of the plaintiff and its verdict must not be disturbed. Motion to set aside the verdict in favor of the plaintiff is denied. Ten days' stay and thirty days to make a case.