PRIDE *v.* STATE.

4383                                        187 S. W. 2d 906

Opinion delivered May 28, 1945.

*John P. Vesey,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

SMITH, J.   Upon his trial, under an information charging him with the crime of murder in the first degree, alleged to have been committed by shooting and killing one Charlie Terry, appellant was found guilty of murder in the second degree, and given a sentence of six years in the penitentiary, from which judgment is this appeal.

It is first insisted that the testimony does not sustain the verdict for the reason that it was not shown that Terry died as the result of his gunshot wound. No one testified that he did, but the testimony shows that the shot fired from a .22 caliber rifle entered Terry's body, about one-fourth of an inch from his navel; that Terry was carried to a hospital and died about four hours after being shot. This testimony sustains the finding that he died as the result of his wound.

It is also insisted that the testimony does not sustain the verdict for the reason that appellant fired the fatal shot in his necessary self-defense. This assignment

of error may be disposed of by saying that the testimony is not only sufficient to support the verdict, but would have supported a conviction for the highest degree of· homicide, inasmuch as it was to the effect that after appellant and deceased had quarreled appellant shot deceased while lying in wait.

The serious and only difficult question in the case is whether the court should have granted the continuance of the trial asked by appellant. In the motion for continuance it was alleged that George Thomas, if present, would have given testimony to the effect that appellant fired the fatal shot in his necessary self-defense, this being the plea which appellant interposed and which was submitted to the jury.

There are two regular terms of the Hempstead Circuit Court, one convening the first Monday in October, and the other the first Monday in April, and it has long been the practice to hold adjourned terms, one in July and one in January. It is also said, without any testimony in the record to support the statement, that at these adjourned terms, all civil cases stood for trial, and all criminal charges against· all defendants not under bond. Appellant was under bond.

The information against appellant was filed September 29, 1944, and at the ensuing regular October term of court a motion for continuance was filed, on account of the absence of witness Thomas. A continuance for a few days was granted, and the witness, Thomas, appeared in response to a subpoena, which had been served upon him in Texas, but the case was not called for trial, in the October term, and no order of continuance was entered.

In the week preceding the holding of the adjourned term in January, the prosecuting attorney advised appellant's attorney that he would insist upon a trial at the ensuing adjourned term, whereupon a second subpoena was issued for the witness, Thomas, and placed in the hands of the sheriff for service. This subpoena was not served for the reason that Thomas could not be found. The first subpoena had been served upon Thomas in Tex-

arkana, Texas, and the attempt was made to serve the second subpoena in the same manner, but Thomas was not to be found at the place where he had previously been employed.

The case was not tried at the regular October term and went over without any order. The statute provides (§ 3962, Pope's Digest) that: "When any circuit court is duly convened for a regular term the same shall remain open for all criminal proceedings until its next regular term, and may be in session at any time the judge thereof may deem necessary; but no such session shall interfere with any other court to be held by the same judge." Here, although Thomas had been subpoenaed in Texas, his recognizance as a witness was not taken, and although he returned to Texas, no request was made that his deposition be taken. The motion for a continuance, filed at the regular term, was again presented to the court at the adjourned term, but was overruled.

If it were held that no lack of diligence was shown to secure the attendance of the absent witness, it was not shown by the motion that the testimony of the absent witness would not be cumulative, nor was it alleged that the facts to which the absent witness would testify were true. The statute imposes this last requirement in motions for continuance and we have frequently held that it was not error to refuse a continuance where the affidavit does not contain that averment. See *Lynch v. State,* 188 Ark. 831, 67 S. W. 2d 1011, and other cases to the same effect there cited. A wide discretion abides with the trial judges in granting or refusing to grant a continuance, and reversals are awarded only when an abuse of that discretion is shown, and we are unable to say that the court abused this discretion.

Evidence was offered to the effect that deceased had made threats of great violence against appellant, and upon this issue the court charged the jury as follows: "You are instructed that even though you may believe and find from the evidence in this case that the deceased had made threats of violence against the defendant, yet

this would not justify the defendant in taking the life of the deceased, but could only be considered by you in determining who was the aggressor at the time of the fatal difficulty, and as to whether or not the defendant acted under an honest belief at the time he killed the deceased that he was in danger of losing his own life, or receiving great bodily injury at the hands of deceased, and in this connection you are told that no threats, however violent, would alone afford any justification for taking human life.''

This instruction comports with the law as declared in the case of *Smith* v. *State,* 172 Ark. 156, 287 S. W. 1026; *Abbott* v. *State,* 167 Ark. 677, 265 S. W. 666, and other similar cases, and no error was committed in giving the instruction.

Testimony was offered showing that appellant bore a good reputation for peace and quietude, while that of the deceased was bad. Upon this issue the court charged the jury as follows: ''Evidence of the violent character of the deceased has been introduced on behalf of the defendant. In this connection you are instructed that the law protects every person from unlawful violence regardless of character and the service done the community in ridding it of a dangerous man is, in the eyes of the law, no justification for the act. Therefore you are instructed that unless you believe from the evidence in this case that the defendant acted in self-defense as viewed from his standpoint at the time, the testimony as to the bad character of the deceased cannot be considered by you for any purpose.''

The objection to this instruction is that it eliminated from the consideration of the jury the question of deceased's reputation for turbulence and violence, but we think it is not open to that objection, as it told the jury to consider the evidence ''as viewed from his (appellant's) standpoint at the time.'' A part of this evidence was, of course, the reputation of the deceased, but if this evidence, in conjunction with other evidence in the case, did not induce the appellant to fire the fatal shot in what he believed to be his necessary self-defense, he was not

warranted in killing deceased because of his bad reputation.

We said in the case of *Bridges* v. *State,* 176 Ark. 756, 4 S. W. 2d 12, that it was as much a violation of the law to kill a bad man as it was to kill a good one.

No error appears and the judgment must therefore be affirmed.