## PEOPLES LOAN & INVESTMENT CO. v. TRAVELERS INS. CO.

No. 13069.

Circuit Court of Appeals, Eighth Circuit.

Oct. 17, 1945.

438

Thos. B. Pryor, Thos. B. Pryor, Jr., and Robert A. Young, all of Fort Smith, Ark., for appellant.

Joseph M. Hill, Henry L. Fitzhugh, and John Brizzolara, all of Fort Smith, Ark., for appellee.

Before WOODROUGH, JOHNSEN and RIDDICK, Circuit Judges.

JOHNSEN, Circuit Judge.

The action is one under Arkansas law, to recover on the double indemnity provision of a life insurance policy for accidental death of the insured, which occurred in an encounter. The insured was manager of the loan business operated by the beneficiary in Fort Smith, Arkansas. The jury returned a verdict for the insurer, and the beneficiary has appealed.

The beneficiary contends here (1) that the court should have declared the insured's death accidental as a matter of law and have directed a verdict against the insurer, and (2) that, if the case was one for the jury, the court erred in admitting some expressions of prior hostility by the insured as competent and relevant on probable aggression.

The double indemnity provision was conventional and covered (with some exceptions not here material) death resulting within 90 days from "bodily injuries effected directly and independently of all other causes through external, violent and accidental means".

The insured was shot and instantly killed by a member of the Arkansas State Police in an encounter at the close of a 14-mile chase. The officer testified that he intentionally shot the insured, believing from the insured's conduct when he attempted to make an arrest that his own life was at stake.

The officer had initially undertaken to stop the insured's car on the highway, near Alma, Arkansas, about 8:30 at night, because one of the front lights of the car was out. He drove his emblemmed patrol car alongside the insured and sounded his siren, but the insured refused to heed the signal and only speeded up his car. The officer repeated the process, with the same result. The insured only further increased his speed and then swung his car sufficiently over in the highway so that the officer would not again be able to parallel him. He succeeded in outdistancing the patrol car by a quarter of a mile, and only after they had passed through the town of Mountainburg and the grade had increased was the officer able to make any gain on the insured's car. The race had continued for approximately 14 miles, when the insured suddenly swung his car off the highway and up a side road. As soon as the officer was able to stop and turn around, he drove up the side road to look for the insured. He discovered the insured's car standing a short distance ahead with its lights turned off.

The officer, according to his testimony, believed from the insured's actions that the insured was a car-thief or other criminal.

who was trying to avoid arrest. He did not know the insured and first learned his identity after the shooting had occurred. The officer got out of his patrol car and approached the insured's car with his flashlight in his hand. The beam of the flashlight revealed the insured sitting in the car and reaching over into its dashboard compartment. As the officer arrived at the car, he trained the light on the insured, opened the car-door with his other hand, and said: "What is wrong with you, Mister, I have run you from Alma out here; come on out." The insured instantly struck the officer with what the latter thought was a pistol (but which was afterwards found to be a piece of steel pipe), knocking the flashlight out of his hand, and said with an oath, "——— ——— ———, I'll come out." The officer thereupon reached for his pistol, struck the insured on the head, and again commanded, "Come on out." The insured with an oath replied, "——— ——— ———, I'll kill you", and started to get out of the car. The officer moved back to the rear wheel of the car and, as the insured stepped out and was straightening up, he fired the single shot which resulted in the insured's immediate death. The officer testified that he believed at the time that the steel pipe which the insured held in his hand was a pistol; that he thought that the insured was intending to use it as soon as he got out of the car; and that it seemed to him necessary to get the first shot, if he was to protect his own life. "I didn't give him any chance to shoot me."

■ On this evidence, we cannot hold, as the beneficiary seeks to have us do, that the court should have declared the insured's death accidental as a matter of law and have directed a verdict against the insurer. Reasonable-minded men, we think, would be entitled to conclude from these incidents, if they credited the officer's testimony, that the insured was the aggressor in the encounter which resulted in his death; that the insured's acts and words were such as reasonably could be expected to lead the officer to believe that his life was in danger and to cause him to take appropriate steps for his own protection; that, on the face of the situation with which the officer was thus momentarily confronted, his act in shooting the insured was not an unnatural precaution or unreasonable protective step under all the circumstances; and that it also was such a step as the insured reasonably could

be regarded as being able to foresee and expect as a probable consequence of his conduct.

■ Under Arkansas insurance law, and generally, one who is an aggressor and resorts to such acts of conduct as to make a possible fatal result to himself reasonably expectable and defensively justifiable on the face of the situation, and is so slain in the encounter, has not suffered a death from accidental means. Price v. Business Men's Assur. Co. of America, 188 Ark. 637, 67 S.W.2d 186; Gilman v. New York Life Ins. Co., 190 Ark. 379, 79 S.W.2d 78, 79, 97 A.L.R. 755; Ætna Life Ins. Co. v. Little, 146 Ark. 70, 225 S.W. 298, 300; Taliaferro v. Travelers' Protective Ass'n of America, 8 Cir., 80 F. 368, 25 C.C.A. 494; 29 Am.Jur., Insurance, § 980. In the Little case, supra, 225 S.W. at page 300, the Arkansas court said that at least a jury question would be made "by the proof of circumstances from which the inference might reasonably be drawn that the deceased was guilty of conduct which would likely or probably subject him to the injury which he sustained." The individual circumstances which the beneficiary here attempts to select from the situation, and on which it contends that the officer was not justified in shooting the insured and that the insured could not reasonably have anticipated such a probable result, are merely elements for argument and jury-consideration in its appraisal of the whole encounter.

■■ The beneficiary's other contention is that the court erred in admitting in evidence some expressions of hostility which the insured had made against the State Police on previous occasions when he had been arrested by them for traffic violations. One of these incidents had occurred approximately three months prior to the fatal encounter. Another had occurred the preceding year, and a third even farther back than that. The exact number of the incidents is not clear, but the substance of what the insured had said on all the occasions, with some variations of profanity, was that the State Police appeared to have a grudge against him; that he was getting tired of being pushed around by them; that he had succeeded in getting one of their number removed from the locality; and that he was going to see that the rest were transferred also so they wouldn't be able to bother him further. The court admitted these declarations of the insured

with the statement that "while the ultimate decision of this case will depend on what happened and what transpired at the scene of the killing, yet I think this testimony is admissible to be considered by the jury in determining who the aggressor was and the status of the minds of the two participants."

The rule of the Arkansas courts is that, where a question of self-defense is involved, the reputation of each party to the encounter for peace and quietude is admissible as tending to show which one was the probable aggressor, Carr v. State, 147 Ark. 524, 227 S.W. 776, 777, but the party offering such evidence is restricted to proof of general reputation and cannot introduce specific instances of conduct (verbal or nonverbal), Bridges v. State, 176 Ark. 756, 4 S.W. 2d 12, 13, Burton v. State, 204 Ark. 548, 163 S.W.2d 160, 162, "unless perhaps they were committed against [the adversary of the encounter]", Edwards v. State, Ark., 185 S.W.2d 556, 557.

The beneficiary argues that the insured's previous expressions of hostility toward the State Police were mere specific instances of conduct, which were not entitled to be shown as a basis for an inference of probable aggression, under the Arkansas exclusionary rule. The expressions, however, were not instances from the vague field of general conduct but were direct declarations of animosity against all the members of the State Police in the locality on the matter of traffic arrests. They were therefore, in our opinion, within the intimation of the Edwards' case, supra, such antecedent conduct toward the insured's adversary in the encounter as was entitled to be treated as being outside the protective purpose of the Arkansas exclusionary rule.

■■ If the insured's expressions were thus not within the exclusionary rule, they were, of course, not incompetent, and the only question involved would be as to the proximateness or remoteness of their relevance. It might perhaps be argued that the insured's annoyance or irritation at his previous arrests and his general threats to have all of the officers transferred away from the locality were too remote in their relevance to be probative of his actual initiation of and engagement in a probably deadly encounter with a member of the State Police, but that was a question solely for the trial court. Logically, the insured's expressed hostility toward the members of the State Police on the matter of traffic arrests and his apparent belief that all of them equally were trying to persecute him could well have a direct bearing on his attitude and actions in a subsequent encounter with one of them over a traffic incident. In any event, mere remoteness of relevance of competent evidence admitted by a federal trial court is not sufficient to entitle a party to a reversal, where the evidence is not such as is clearly apt to confuse a jury's mind or prejudice its judgment. Metropolitan Life Ins. Co. v. Armstrong, 8 Cir., 85 F.2d 187, 193.

Here the proximateness or remoteness of the evidence involved in relation to the question of aggression in the encounter was plainly a matter that could be understandingly and fully covered in the arguments of counsel to the jury. It involved human conduct in a field of common experience which could not possibly be confusing to the mind of the jury, and especially so in the light of the court's statement at the time that its only relevance was on the question of probable aggression. Nor was it evidence that was clearly apt to arouse the prejudices of the jury or inflame its passions, for threats to get an officer's job for a traffic-violation arrest are hardly strange words to the ears of an American citizen, and probably not even to his own lips.

■ We have said that the evidence involved was in our opinion not incompetent as being within the exclusionary character-evidence rule of the Arkansas courts. Even, however, if it had been within that rule, this would not have been controlling in the situation. Rule 43 (a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that, in proceedings in the federal courts, all evidence which is admissible under any previous rule of federal practice or under any federal statute or under the practice of the state where the court is held "shall be admitted" and "In any case, the statute or rule which favors the reception of the evidence governs."[1] No exclusionary principle laid down by the decisions of the Su-

---

[1] Cf. 55 Harv.L.Rev. 224, "Rule 43(a) should be interpreted so as to admit in evidence what the district court thinks ought to be admitted when either the United States or the state in which the trial court is sitting has not laid down a controlling rule, and the other excludes the type of evidence in question."

preme Court or of this Court makes the evidence here involved incompetent, and the question under previous federal practice therefore is one of relevance only.

Finally, it may be observed in passing that, since this action was tried in the District Court, the Supreme Court of Arkansas, in a companion case, where the wife of the insured was the beneficiary in the policy, has held that the facts entitled the insurer to a directed verdict, under a provision in that policy which excepted death resulting directly or indirectly from any violation of law by the insured. Union Central Life Ins. Co. v. Sims, Ark., 189 S.W.2d 193.

The judgment is affirmed.