GIROLAMO MAGNOLI, Plaintiff, *v.* JOHN HANÇOCK MUTUAL LIFE INSURANCE COMPANY, Defendant.

Municipal Court of the City of New York, Borough of Manhattan, January 16, 1948.

*Peter Ippolito* for plaintiff.

*George W. Riley* for defendant.

SCHWEITZER, J.  This action is brought to recover the proceeds of a policy of life insurance in New York standard statutory form.  Attached to and forming a part of said policy is a provision headed: Supplementary Provision — Additional Benefit for Death Caused by Certain Bodily Injuries.

It is upon the supplementary provision that this action is based.  The death of the insured occurred on August 23, 1946,

whereupon the company paid the face amount, without prejudice to the present action. The said supplementary provision set forth so far as material that, subject to the conditions and the exceptions in the contract, the company will pay upon due proof, etc., the additional indemnity specified, if the insured's death was caused directly, independently and exclusively of all other causes, by a bodily injury sustained solely by external, violent and accidental means. Among the exceptions and exclusions are the following claimed to be of significance in the present case: " No such Additional Benefit will be payable  *  *  *  if death results, directly or indirectly, or wholly or partially,  *  *  *  (5) from injuries intentionally inflicted on the Insured by any person, while sane or insane, or (6) from engaging or having engaged in any violation of the law."

The insured, Giacomo Salati, was a middle-aged man, who had been a boarder in the home of one Melchior Bucci, a married man, and resided in the Bucci home. There is evidence in the record tending to establish that the insured and Mrs. Bucci became friendly, to the point where Mrs. Bucci left her husband and took up her residence elsewhere. Several weeks later, the insured also quit the Bucci home. On the evening of August 23, 1946, Bucci met the insured, who at the time was escorting Mrs. Bucci. The last two individuals had just emerged from an apartment house together, and were about to enter an automobile. An altercation ensued between the two men. Bucci has claimed that in defending himself from blows struck by the insured, he inflicted certain knife wounds upon the insured. There is no question that the insured died of the wounds thus inflicted upon him in this encounter. The assistant medical examiner testified to the nature thereof, and that the cause of death was an effusion of 3,000 cubic centimeters of blood into the insured's thoracic cavity. The testimony is that Bucci sustained a cut upon the fleshy part of his hand, requiring thirteen stitches to close the same. The latter repaired immediately to a hospital seeking medical aid, where he was apprehended and arrested by the police.

Bucci's indictment by the Grand Jury of Bronx County for manslaughter in the first degree followed. Upon his plea of guilty thereto, the late County Judge LESTER PATTERSON sentenced him to State's prison for a term of seven and one-half to fifteen years, and suspended the operation of said sentence.

At the conclusion of all the testimony given at the present trial, the defendant moved for the dismissal of the complaint,

and for the direction of a verdict of no cause of action, upon which the court reserved decision while it submitted the issues to the jury for their general verdict. The verdict being in favor of the plaintiff, the defendant renewed its said motions, and moved for a directed verdict pursuant to section 457-a of the Civil Practice Act.

In determining the liability of the defendant company, resort must be had to the language of the policy. The late Chief Judge CARDOZO, writing in the case of *Goldstein* v. *Standard Accident Ins. Co.* (236 N. Y. 178, 183) has admonished us that the problem in such case is one as to the meaning of a contract. The court is to follow the chain of causation so far, and so far only, as the parties meant that the court should follow it. "The causes within their contemplation are the only causes that concern us".

Upon a motion of this sort, the plaintiff is entitled to the most favorable view of, and inferences from, the evidence. The language of the insurance policy should be liberally construed to effectuate the purpose for which it was made. It is legitimate, therefore, to examine the whole contract, to discover the purpose for which it was made. Its language is to be considered and judged in the light of the understanding of common speech, or, as is sometimes said, in the language of the "average man". But, in so doing, it is not permissible to lose sight of the fact that the coverage is within the four corners of a written contract, to be gathered from a fair reading of its terms and provisions. It is not permissible to deviate therefrom, nor to enlarge upon the pale of the risk undertaken, especially if to do so results in placing an unreasonable burden, and one not contemplated to be undertaken by such contract, upon the insurer.

The crux of the matter then is whether, having regard to all the facts in the record, and deeming the most favorable inferences to be established in plaintiff's favor, such facts and inferences will support the verdict of the jury. Or, stating it alternatively, is it reasonably to be held that the happening and circumstances fit within the coverage granted by this supplementary provision? (*Pardee* v. *Prudential Ins. Co. of America*, 171 Misc. 981; *Berkowitz* v. *N. Y. Life Ins. Co.*, 256 App. Div. 324.)

Unlike the general coverage of the life insurance portion of the policy, the additional benefit gives but a limited and restricted indemnity. The plaintiff beneficiary obviously has the burden of establishing that the death of the insured occurred

under such circumstances that he is entitled to a recovery under said provision. The issue of whether the death of the insured was caused by a bodily injury which was sustained by external, violent and accidental means within the meaning of such a provision, and whether the death falls within one of the above-quoted exclusionary provisions, are alike provable under the general denial. (*Whitlatch* v. *Fidelity & Casualty Co.,* 149 N. Y. 45.) Such burden of establishing does not shift, but remains at the end of the case where it was at the beginning thereof. (*Kay* v. *Metropolitan Street Ry. Co.,* 163 N. Y. 447, 453.)

If the plaintiff has failed to establish upon the whole record, by a fair preponderance of the evidence, that the death of the insured resulted from a bodily injury sustained by external, violent, and accidental means, within the purview of the law and of such policy, then it is of no moment whether the happening might fall within one of the above-quoted exclusions or exceptions. The latter, however, serve to define the nature of the coverage intended to be conferred, and resort may properly be had to them for that purpose, as they were plainly intended to limit the risk undertaken.

It has been held on occasions too numerous to be cited here, that the word "accident" connotes a result which is unforeseen, unexpected, extraordinary — in short, an unlooked-for mishap. This is the test usually applied in the common speech of men and the test which it was incumbent upon the court to apply. (*Borneman* v. *John Hancock Mutual Life Ins. Co.,* 289 N. Y. 295; *Meyer* v. *New York Life Ins. Co.,* 249 App. Div. 243; *Berkowitz* v. *N. Y. Life Ins. Co.,* 256 App. Div. 324, *supra.*)

In determining the liability under the supplementary provision in this case, the insured is presumed to intend the natural and probable consequences of his own wrongful acts in attacking Bucci. Every normal individual would react in a manner to defend himself against an assault, warranted or unwarranted. The insured must have foreseen that Bucci would defend himself in the manner in which he did act in his defense. Where, therefore, the insured places himself voluntarily in a position where a tragic result was not only foreseeable, but was reasonably to be expected, such occurrence resulting in death is not an accidental death within the terms and provisions of such a policy. (*Borneman* v. *John Hancock Mutual Life Ins. Co., supra*; *McQuade* v. *Prudential Insurance Co. of America,* 166 Misc. 524; *Peoples Loan & Investment Co.* v. *Travelers Ins. Co.,* 151 F. 2d 437; *Gilman* v. *N. Y. Life Ins. Co.,* 190 Ark. 379.)

The foregoing rule finds general acceptance throughout the United States. Many of the leading cases have been collated in 5 Couch, Encyclopedia of Insurance Law, section 1158, where it is stated at page 4068: "Injuries sustained by an insured in an encounter brought about by his assault upon another with a deadly weapon, or upon one whom he knew had such a weapon, are not sustained by accident, or by accidental means, since in such a case the injury or death is the natural and probable consequence of his own act. And this, although the assailant did not know that his victim was armed."

In *Gilman* v. *N. Y. Life Ins. Co.* (*supra,* p. 382) the court stated: "If the insured is killed by another in his necessary self-defense, then it cannot be said that his death was accidental within the meaning of the policy, and affords the insurer a complete defense to an action on the policy for accidental death."

So, also, in *Peoples Loan & Investment Co.* v. *Travelers Ins. Co.* (*supra,* 439) the court stated the rule in the following language: "One who is an aggressor and resorts to such acts of conduct as to make a possible fatal result to himself reasonably expectable and defensively justifiable on the face of the situation, and is so slain in the encounter, has not suffered a death by accidental means."

A case cited and relied upon by the plaintiff is readily distinguishable, and in fact supports the views hereinbefore expressed. In *Smith* v. *Continental Casualty Co.* (259 App. Div. 357) the undisputed evidence indicated that the insured was sitting in his living room, reading his paper, when a strange girl dashed into his apartment, closely pursued by her assailant. Concededly the insured was unacquainted with either of the said parties. The assailant in attempting to assault the strange girl stabbed the insured twice, the latter dying on the following day. Here, the tragic result was totally unforeseeable and unpredictable. The insured at any rate had done absolutely nothing which was calculated to set in motion any element in the chain of events, which culminated in the insured's death. His death so occasioned was accidental within the settled definition of that word as hereinbefore set forth, and the case is nowise in conflict with the views set forth in this opinion.

Giving to the plaintiff the most favorable version of the testimony adduced at the trial, and even conceding that Bucci did not intend to kill the insured, but acted only from the motive of self-defense as the occasion dictated, the death of the insured

cannot be held to be accidental within the meaning of the provision above quoted. It is, therefore, unnecessary to determine whether or not the defendant has a complete defense by reason of the exceptions and exclusions forming a part of the supplementary provision.

Frequently, a question may be presented to be passed upon by a jury, as to whether or not death from stabbing at 'the hands of another person is an accident, when the evidence on the point is conflicting. In the instant case, however, the court has given to the plaintiff the most beneficial views of the testimony, even to the point of eliminating any intent upon the part of Bucci to effect the death of the insured. The evidence is conceded that the acts of the witness Bucci were the natural precautions and reasonable protective steps taken by a normal individual under the circumstances he found himself in when confronted by the insured. The acts which resulted were such that the insured could have reasonably foreseen and expected as the natural and probable consequences of his own unlawful conduct. Under the circumstances the plaintiff has palpably failed to sustain by a preponderance of the evidence that the death of the insured was occasioned directly, independently and exclusively of all other causes by a bodily injury sustained solely by external, violent and accidental means. (*Borneman* v. *John Hancock Mutual Life Ins. Co.,* 289 N. Y. 295, *supra.*)

The verdict of the jury is unsupported by any evidence of the grade which the law regards as essential to a recovery, and the evidence is wholly insufficient in point of law to sustain the plaintiff's claim urged in this case. To permit such verdict to stand would in effect create a risk not fairly contemplated nor undertaken by the terms of the aforesaid supplementary provision. Since the court has reserved decision upon the defendant's motions for a direction, etc., said motions are now granted, the jury's verdict is set aside, and the court directs a verdict in favor of the defendant, of no cause of action.