METROPOLITAN CASUALTY INSURANCE COMPANY *v.* CHAMBERS.

## Opinion delivered October 21, 1918.

1. CONTINUANCE—ABSENCE OF WITNESS FROM STATE.—It was not an abuse of discretion to refuse a continuance asked for the purpose of securing the attendance of a witness absent from the State where it did not appear that the witness would return to this State within a reasonable time.

2. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—If there is any legal evidence to support a verdict, it will not be disturbed on appeal.

3.  EVIDENCE—EXPERT TESTIMONY—SUBJECT-MATTER.—Where the effect produced upon the hand of deceased by certain fatal wounds appealed more properly to the technical knowledge of a physician than the common knowledge of an ordinary man, it was proper to admit the expert testimony of such physician.

4.  SAME—EXPERT TESTIMONY—HYPOTHETICAL QUESTIONS.—Hypothetical questions must embrace undisputed facts that are essential to the issue, and in taking the opinion of experts upon hypothetical questions either party may assume as proved all facts which the evidence tends to prove, and may elicit such opinion on the whole evidence or any part thereof.

5.  INSURANCE—DEATH BY ACCIDENT—BURDEN OF PROOF.—Upon proof of death of an insured from injuries received by him, there arises a presumption of accidental death within the meaning of an insurance policy insuring against injury by external, violent and accidental means, and the burden was on the insurer to prove that the insured's death resulted from the necessity on the slayer's part of killing insured in necessary self-defense.

6.  INSURANCE—ACTION ON POLICY—EXCESSIVENESS OF ATTORNEY'S FEE.—In fixing the statutory fee of an attorney in an action against an accident insurance company upon a policy of $4,500 where the trial consumed three days' time, and was hotly contested, and much time was consumed in preparation of the case, it was not an abuse of discretion to allow an attorney's fee of $750.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; affirmed.

*Brown & Anderson,* for appellant; *T. W. Brown,* of counsel.

1. A hypothetical question must be based upon evidence and include all facts in evidence necessary to enable the witness to give an opinion which will be of assistance to the jury. 17 Cyc. 243, and cases cited.

2. The attendance of a witness may be compelled when necessary to the proper trial of a case. Kirby's Dig., § 3159.

3. A policy is avoided if the death or injury is caused by provoking an affray; and it is not necessary to avoid it that the person inflicting the injury should have acted with the circumspection which would be necessary to furnish him a legal defense to a prosecution for the assault. 54 Nat. Corp. Rep. 502; 65 So. 852; 25 C. C.

A. 494; 147 Pac. 1175; 108 N. E. 296; 77 S. E. 1072; 143
Ga. 758; 36 S. W. 169; 3 N. E. 818; 61 N. W. 485; 38 Mo.
App. 460; 63 *Id.* 1; 109 Ky. 661; 91 N. W. 135; Chamber-
layne on Ev., § 938; 147 Pac. 1175; 191 S. W. 998; 43 N.
E. 405; 144 N. Y. 354.

4. The burden was on plaintiff. 193 S. W. 540; 1
Cyc. 296; 16 *Id.* 926; Kirby's Dig., § 3107; Wigmore, Ev.,
§ 2487; 68 Ark. 284; Chamberlayne on Ev., § 935; 4 Craw-
ford's Dig. Ark. Rep. 261; 43 N. E. 405; 191 S. W. 998.
He must establish that the injury was due to external and
violent means but that it was accidental. *Ib.*

6. In the allowance of attorney's fees the amount
should be reasonable. Kirby's Dig., § 3107; 68 Ark. 284;
4 Enc. Dig. Ark. Rep. 261.

7. Accidental killing must be proved. 80 Ark. 190;
128 *Id.* 155. See also 199 S. W. 108.

*Troy Pace,* for appellee.

1. Upon the facts the evidence is ample to sustain
the verdict.

2. There was no error in refusing a continuance.
The court's discretion was not abused. Evatt's testi-
mony was cumulative only. The motion was not in
statutory form and failed to set out the necessary facts.

3. The hypothetical questions were proper. 87 Ark.
243; 98 *Id.* 359; 203 S. W. 271.

4. The motion for a peremptory instruction was
properly overruled. A *prima facie* case was made and
the burden of proof was placed on defendant. 199 S. W.
108; 128 Ark. 155; 193 S. W. 540; 75 Wis. 116; 17 Am.
St. 184; 9 A. & E. Ann. Cases, 919.

5. There is no error in the instructions. 126 Ark.
483; 191 S. W. 25; 198 *Id.* 278. See also 73 Ark. 187;
125 *Id.* 567; 6 *Id.* 494-5.

6. The attorney's fee was reasonable. 128 Ark.
155; 193 S. W. 540.

HUMPHREYS, J. Appellee instituted suit against ap-
pellant in the Third Division of the Pulaski Circuit Court
on the 7th day of September, 1917, to recover $4,500 al-

leged to be due her under the terms of accident policy No. 233,703, issued by appellant to her husband, Chester A. Chambers, on the 19th day of October, 1914. Appellee was the beneficiary in the policy and the policy provided for the payment of $4,500 to her for bodily injuries sustained by her husband, Chester A. Chambers, directly, solely and exclusively through accidental means and resulting in the loss of his life. The policy was in force on the 7th day of May, 1917, at which time it was alleged that Chester A. Chambers sustained bodily injuries directly, solely and exclusively through accidental means near Harrison, Arkansas, from gunshot wounds inflicted by one H. P. Evatt, from the effects of which he instantly died.

Appellee filed answer, denying that Chester A. Chambers came to his death from accidental means, but charged that H. P. Evatt, in his own defense, shot and killed Chester A. Chambers during a quarrel initiated by the said Chambers at a time when the said Chambers was making a hostile demonstration against him with a pistol. The cause was submitted to a jury upon the pleadings, evidence and instructions of the court, upon which a verdict was returned against appellant for $4,500. By agreement, six per cent. was allowed from September 2, 1917, and judgment was rendered in favor of appellee for $4,617.75 for debt and interest; $540 by way of a twelve per cent. penalty upon the amount of the policy, and an attorney's fee for $750, making an aggregate judgment in favor of appellee in the sum of $5,907.75. From this judgment an appeal has been prosecuted to this court.

Appellant insists that the court erred in overruling a motion for continuance filed by it on the 4th day of February, 1918. Appellant, in its motion for continuance, sought to bring itself within section 3159 of Kirby's Digest, which is as follows:

"Where it is made to appear, by the affidavit of the party and the written statement of his attorney, that the testimony of a witness is important, and that the just

and proper effect of his testimony can not, in a reasonable
degree, be obtained without an oral examination before
the jury, the court may, at its discretion, order the per-
sonal attendance of the witness to be compelled, although
such witness may otherwise be exempt from personal at-
tendance by law.'' The motion for continuance fol-
lowed the language of this statute and requested a con-
tinuance until such time as the court could issue an order
for the personal attendance of witness Evatt and until
it could compel his attendance by attachment. This case
originally stood for trial in October, 1917, at which time
H. P. Evatt and the other witnesses were present, but
Evatt claimed his constitutional exemption not to testify
because it might tend to convict him on the charge of
murder then pending against him in the Boone Circuit
Court for killing Chester A. Chambers. The cause was
continued until the 4th day of February, 1918, and Evatt,
who was in attendance at that time in obedience to a sub-
poena served upon him in Boone County, was ordered to
return for the trial on February 4 following. Evatt was
acquitted of the murder charge and immediately removed
from the State of Arkansas to the State of Wyoming
and was in the latter State when this motion for contin-
uance was filed. It was not shown when or whether
Evatt intended to return to the State of Arkansas. We
do not think the statute invoked by appellant as ground
for continuance was ever intended to operate on a witness
permanently out of the jurisdiction of the court. The
statute itself provided that such an order might be is-
sued in the discretion of the presiding judge. The court
certainly did not abuse its discretion in refusing to grant
the request without a showing that the witness would re-
turn to the jurisdiction of the court within a reasonable
time. No insistence is made that prejudice resulted be-
cause appellant had no opportunity to take the deposition
of this absent witness. In fact, his evidence taken in
the trial on the criminal charge in Boone County was
used as his deposition in this trial by offer of appellee
and acceptance of appellant. The uncertainty as to the

time when such an order, as requested, could be issued and enforced justified the court in denying a continuance.

It is also insisted by appellant that the uncontradicted evidence showed that Chester A. Chambers was shot and killed by H. P. Evatt in necessary self-defense. The only three eye witnesses testified, in substance, as follows: That they, in company with Chester A. Chambers, left Harrison during the afternoon of the 7th day of May, 1917, in Chester A. Chambers' automobile for Capps, a few miles north of Harrison, where Chester A. Chambers was going to adjust a loss occasioned by the burning of a school house at that place; that Chambers was drinking and was abusive toward and about H. P. Evatt; that Chambers had a large 38 caliber pistol in his grip; that when the last stop was made to take a drink, Chambers, who was sitting in the middle of the back seat in the automobile, came up with the pistol pointing it at Evatt; that Oscar Hudgins had just stepped out of the car and that George Crump, who was sitting on the front seat by Evatt, looked around and exclaimed "My God, don't do that;" that Evatt immediately fired three shots at Chambers and killed him. According to the evidence of Evatt, the shooting occurred as follows: "The first thing that attracted my attention was little George saying 'My God, don't do that—jump.' I looked around. Mr. Chambers had the pistol in his hand holding it at me; I thought he was drunk, and that he was going to shoot me. I grabbed for mine and fired across my shoulder with my left hand. I am left handed. I got out of the car some way—I don't know how. I don't know whether all the shots were fired while I was in the car. I was laboring under considerable excitement at the time. I shot to save my life—I thought he was going to kill me. I don't know how rapidly I fired those shots."

Crump testified that he grabbed either the pistol or Chambers' arm, he did not know which, and attempted to push it out and up. Further, the testimony showed that the body fell in the right corner of the back seat

with the head resting against the breast and that they agreed to bring the body back to Harrison; that Crump got in the back seat and attempted to support the body, and when they attempted to start the car it was found that the gearing had been stripped; that they then gave up bringing the body to town in that car and, later, Crump got in a car that was coming along and went to town to inform the officers of the killing, leaving Hudgins and Evatt at the place of the killing.

When the sheriff and physician and their party arrived, Mr. Evatt, Mr. Hudgins and Mr. White were near the car. The sheriff gave the following testimony with reference to the situation as he found it upon his arrival. "The body was in the car, on the back seat; right about the right-hand end of the seat with the hands on the seat. His head was resting on his right breast. I think his back was against the back of the seat. There was a pistol between the body and the right hand end of the seat. That is the pistol, a 38 Smith & Wesson. There were three empty and three loaded cartridges. The hammer was on an empty. The next time it revolved, it would have been on a loaded one. It showed no signs of having been fired. The muzzle of the gun was under his leg and the hammer or grip was right at the end of his fingers. There was room between his legs and the seat for the gun to lie under on the seat. It was under his leg to about the cylinder."

It is suggested that the physical facts corroborate the evidence of the three eye witnesses and, because of this fact and the further fact that there is no material conflict in their statements, it necessarily follows that it was established by the undisputed proof that Chester A. Chambers was killed by Evatt in necessary self-defense and not by accidental means. But such is not the conclusion of the whole testimony. The evidence showed that Chambers and Evatt had quarreled over a trifling matter of a few dollars; that during the quarrel in Harrison and after leaving Harrison, Chambers had used opprobrious names to and about Evatt; that Evatt had a

small automatic pistol in his pocket, but just before leaving Harrison had borrowed a large pistol from the express agent to take with him.   There was evidence also tending to show that Chambers was not drunk; that the position of the body and pistol did not accord with the killing as detailed by the eye witnesses; that the eye witnesses made different statements after the killing from the statements made at the trial; that the deceased could not have retained a hold on the pistol and continued pointing it at Evatt after the first shot, because either one of the three shots caused instantaneous death and a relaxing of the muscles; that the pistol must have dropped from the hand after the first shot because of a relaxation of the muscles and could not have fallen in the place it was found.

The evidence is quite voluminous and sharply conflicting in some material parts.   Other circumstances could be detailed tending to establish the theory of appellant that the killing was in necessary self-defense, and, likewise, circumstances could be pointed out tending to establish appellee's theory that the killing was unnecessary and was without legal excuse.   To do either or both would add unnecessary length to the opinion.   Suffice it to say that, after a careful consideration of the evidence, we have concluded that it can not be said that the undisputed evidence established that the killing was in necessary self-defense.

It is also contended that the verdict was contrary to the weight of the evidence.   Under the well-established rule of this court, the jury are the sole judges of the weight of the evidence.   If there is any legal evidence to support the verdict, it will not be disturbed by this court on appeal.   There is sufficient legal evidence in the record to support the verdict, and, therefore, the court properly refused to peremptorily instruct a verdict for appellant.

It is insisted that the hypothetical questions propounded to Dr. C. M. Routh offended against the law because (1) they did not necessarily elicit technical knowl-

edge; (2) that they assumed a fact not contained in the evidence; (3) that they omitted facts essential to any theory of the case.

1.    The questions elicited information touching upon the effect of the wounds on the hand.   We think the effect produced upon the hand by wounds of the character described in the evidence appealed more properly to the technical knowledge of the physician than the common knowledge of the ordinary man.   Gauged by this test, the questions were proper in substance and form.    .

2.    The fact charged as not proved and assumed to be true was that "Chambers had been holding the pistol up in an extended position in an effort to shoot it." Evatt testified that when he looked around  Mr. Chambers had the pistol in his hand holding it at him; that he thought he was drunk and going to shoot him. George Crump, Jr., who was sitting in the front seat, said he saw Chambers coming up with a pistol and caught at it and tried to push it up and outward.   Oscar Hudgins said that Chambers was sitting in the middle of the back seat, immediately behind Mr. Crump; that Mr. Chambers had the gun in his hand, and that Crump was holding it up . and out of the way and first hallooed:  "My God, don't do that."   It seems to us that the assumption that Chambers was holding the pistol up in an effort to shoot it was a fair summing up of the evidence of the three witnesses as to the position of the pistol, and not simply an assumed fact unsupported by the evidence.

3.    The omitted fact claimed to be essential to any theory of the case was that Mr. Crump had hold of Chambers' hand, or, to put it in the language of learned counsel for appellant, that Chambers' hand was in manacles.   There is some uncertainty as to whether Mr. Crump had hold of the pistol or Chambers' hand, and a conflict in the evidence as to whether he had hold of either, or, instead, was pushing the hand upward and outward; so, for this reason, it could not be assumed that he had hold of Chambers' hand.   The question was aimed at the effect of the wounds on the hand in order

to ascertain whether the hand would hold onto or loose the pistol. This involved the question of whether the muscles of the hand would immediately relax, due to the wound. It seems to us that appellee is correct in the suggestion that the muscles would be affected in the same way, whether the arm was free or held or being pushed upward and outward.

As above stated, the real issue was what effect the wounds had on the hand. This court has held (quoting syllabi 48 and 49, *Taylor* v. *McClintock*) that:

"Hypothetical questions must embrace undisputed facts that are essential to the issue," and "in taking the opinion of experts upon hypothetical questions either party may assume as proved all facts which the evidence tends to prove, and may elicit such opinion upon the whole evidence or any part thereof."

We think the form and substance of the hypothetical questions propounded to Dr. Routh were strictly within this rule as applied to undisputed facts essential to the issue. *Taylor* v. *McClintock*, 87 Ark. 243; *Mo. & N. A. Rd. Co.* v. *Daniels*, 98 Ark. 352.

It is also insisted that the court erred in casting upon appellant the burden of showing that Chambers was killed by Evatt in necessary self-defense after appellee had proved that he was found dead in an automobile due to gunshot wounds received by him. It is the settled law in this State that proof of death of an insured from injuries received by him raises a presumption of accidental death within the meaning of an insurance clause insuring against injury by external, violent and accidental means, and this presumption will continue until overcome by affirmative proof to the contrary on the part of the insurer. So the court did not err in refusing to give a peremptory instruction because the verdict is contrary to the law, nor in instructing the jury that the burden is upon appellant to prove that the injuries resulted from the necessity on the part of Evatt of killing Chambers in his own necessary self-defense. By refer-

ence to the answer, it will be seen that appellant pleaded Evatt killed Chambers in his own defense at a time when Chambers was making a hostile demonstration against him with a pistol. This defense, if true, exempted appellant from liability under the terms of the policy and the burden was upon it to establish the alleged exemption after appellee proved that death resulted to Chambers through unexplained, external injuries. *Business Men's Accident Association of America* v. *Cowden*, 131 Ark. 419; *Aetna Life Insurance Co.* v. *Taylor*, 128 Ark. 155; *Preferred Accident Insurance Co.* v. *Fielding*, 9 A. & E. Ann. Cases, 919.

It is unnecessary in this view of the law to discuss this assignment of error in relation to each instruction given and refused. The trial court adopted appellee's conception of the law in this particular and incorporated it in the instructions given, and refused to give appellant's instructions based upon the theory that the burden rested upon appellee to prove that Chamber's death did not result from Chamber's own negligence. In this, the court was correct. We find no reversible error on account of other objections and exceptions to instructions given and refused.

This brings us to a consideration of the attorney's fees fixed by the court. The actual trial of this cause consumed three days' time. The case was hotly contested. An inspection of the record convinces us that much time was consumed in the preparation of the case. Appellant does not contend that the court had no authority to fix the fee, but that the court fixed an unreasonable amount upon the record before it. We can not say that the court abused its discretion in the allowance of $750 to the attorney for the preparation and trial of a hotly contested case of this magnitude.

No error appearing in the record, the judgment is affirmed.