GILMAN *v.* NEW YORK LIFE INSURANCE COMPANY.

4-3703

Opinion delivered February 18, 1935.

*Owens & Ehrman,* and *John M. McFarlane,* for appellant.

*Louis H. Cooke* and *Rose, Hemingway, Cantrell & Loughborough,* for appellee.

McHANEY, J.   Appellant is the widow of Will Gilman, who, in his lifetime, carried a policy of life insurance with appellee in the principal sum of $2,000.   The policy had a double indemnity clause which provided that, in the event of his death through external, violent and accidental means, the beneficiary would be paid an additional $2,000.   Said clause had a proviso as follows, "that such double indemnity shall not be payable if the insured's death resulted from * * * committing an assault or felony."   On May 10, 1933, Will Gilman was shot and killed by one W. H. Walker with a pistol.   He was shot and killed in the store of Mr. Theo A. Dillaha at 310 East Markham Street, Little Rock, Arkansas. Gilman went in the store to attempt to collect a debt from Walker.   The evidence shows that he walked up to where Walker was and in a profane way demanded of Walker that he pay him his debt, taking hold of his shirt; that

Gilman was a large man, weighing perhaps two hundred pounds or more, whereas Walker was much smaller and weighed about one hundred and forty or one hundred and forty-five pounds. Walker jerked loose from Gilman, drew a pistol and shot him. Appellee paid to appellant, the beneficiary in the policy, said principal sum of $2,000. It refused to pay the double indemnity, and this suit followed to collect same. At the beginning of the trial the appellee admitted that Gilman was shot and killed by Walker, that his death resulted from external and violent means, that there was a presumption of law that his death was accidental, and that the burden was on it to show that it was not accidental within the meaning of the policy, and it thereupon demanded and was given the right to open and close the case. A number of employees and others in the store at the time testified concerning the matter, and all agree that it happened very quickly, and that Gilman did not strike or attempt to inflict any physical injury upon Walker in any way. There was some evidence tending to show that Gilman caught hold of Walker's shirt after Walker had reached in his pocket presumably for his gun. The case was submitted to a jury, and the trial resulted in a verdict and judgment for appellee.

Error is assigned on this appeal for the giving of instruction number 2 requested by appellee, and in the modification and giving as modified instructions 2, 3 and 6 requested by appellant.

Instruction number 2 given at appellee's request reads as follows:

"You are instructed that proof of the fact that the death of Gilman occurred as a result of a pistol raises a presumption that such death was accidental so far as he was concerned. Upon proof of the fact that one W. H. Walker fired the fatal shot, then the presumption also arises that he shot with justification."

It is conceded that the first sentence in said instruction is correct, but it is insisted that the second sentence is incorrect in that there is no presumption that Walker fired the fatal shot with justification. In this connection

the court correctly instructed the jury at appellant's request as follows:

"The defendant admits that Will Gilman was killed by a pistol shot fired by W. H. Walker, and that Gilman's death was the result of violent and external means. The presumption therefore arises that it was accidental, and the burden is upon the defendant to prove by a preponderance of the evidence that Gilman's death was not accidental."

This latter instruction is a correct declaration of the law in this State as settled by many cases. In *Metropolitan Casualty Company* v. *Chambers,* 136 Ark. 84, 206 S. W. 64, the court said: "It is the settled law in this State that proof of death of an insured from injuries received by him raises a presumption of accidental death, within the meaning of an insurance clause insuring against injury by external, violent, and accidental means; and this presumption will continue until overcome by affirmative proof to the contrary on the part of the insurer." See also *Pacific Mutual Life Insurance Company* v. *Ware,* 182 Ark. 868, 33 S. W. (2d) 46, and cases cited in both cases.

It is also true that, if the insured is killed by another in his necessary self-defense, then it cannot be said that his death was accidental within the meaning of the policy, and affords the insurer a complete defense to an action on the policy for accidental death. But the burden is upon the insurer to prove justification, and there is no presumption of law that the killing was with justification. If Walker had been on trial for the killing of Gilman, there would have been no presumption of justification in his favor. Our statute, § 2369, Crawford & Moses' Digest, defines justifiable homicide as follows:

"Justifiable homicide is the killing of a human being in necessary self-defense, or in defense of habitation, person or property, against one who manifestly intends or endeavors by violence or surprise, to commit a known felony."

Section 2374 provides: "A bare fear of those offenses, to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the kill-

ing. It must appear that the circumstances were sufficient to excite the fears of a reasonable person, and that the party killing really acted under their influence, and not in the spirit of revenge.''

Section 2375 provides: ''It must appear that the danger was so urgent and pressing that in order to save his own life, or to prevent his receiving great bodily injury, the killing of the other was necessary, and it must appear also that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further contest before the mortal blow or injury was given.''

Another section, 2342, provides: ''The killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve upon the accused, unless by the proof on the part of the prosecution it is sufficiently manifest that the offense committed only amounted to manslaughter or that the accused was justified or excused in committing the homicide.''

So it will be seen that had Walker been on trial for the killing of Gilman, the burden would have been on him to prove circumstances of mitigation that would justify or excuse the homicide, and there would not be any presumption of justification. Such being the case, how can it be said that any such presumption arises for the benefit of the insurer? Then too that part of instruction 2 is in direct conflict with the first part of it, and in direct conflict with instruction above quoted, given at appellant's request, hereinabove set up. The presumption of justification would nullify the presumption of accident. But appellee contends that, even though that part of said instruction number 1 was erroneous, the case should nevertheless be affirmed because it was entitled to a directed verdict on the whole case. This would be true if, as contended, appellee was entitled to a directed verdict. We cannot agree that it was so entitled. This contention is based on the theory that the parties expressly agreed that there should be no liability for double indemnity if death resulted from committing an assault, and that the undisputed proof shows that

Gilman was committing an assault upon Walker, at the time he was shot and killed. We cannot agree with appellee that Gilman was as a matter of law committing an assault upon Walker within the meaning of the policy. There is no proof that Gilman was fighting Walker or that he struck or injured him in any way. It only shows that he caught hold of Walker's shirt and demanded his pay. Whether he did this before or after Walker reached for his pistol, the evidence is in dispute. We think the word "assault," as here used, means something more than a simple "assault." The language is that the double indemnity shall not be paid to the insured "from committing an assault or felony." If the insured had been killed while committing larceny, burglary, robbery, arson, or any other felony, no liability would attach. The word "assault," as here used, refers to such an assault as would justify the person assaulted in taking his life. In other words, before appellee would be exempted from liability under its policy, Gilman must have been guilty of such an assault as justified Walker, acting as a reasonably prudent person, in firing the fatal shot. Whether Gilman made such an assault upon Walker was a question for the jury under proper instructions from the court.

Counsel have not cited any case construing such language in a policy of life or accident insurance, nor have we found such a case directly in point. There are a number of cases from other jurisdictions construing policies insuring against death or injury from "external, violent and accidental means," and a general statement of the law in this regard with a citation of authorities to support it may be found in § 1158, 5 Couch on Insurance. It is generally held that injuries sustained by an insured who assaults another with a deadly weapon or upon one he knew had such a weapon, are not sustained by accident, for the reason that his injury or death resulted from the natural and probable consequence of his own act. Continuing the author says:

"On the other hand, there is authority to the effect that, where the insured did not use a deadly weapon in assaulting the one who killed him, and did not know that

the other had such a weapon, his death resulted from accident, since the result was one which could not have been anticipated from the circumstances. Thus, where a guest at a hotel, the proprietor being sick and absent, attempted forceably to eject another from the hotel, and was killed, the death was held accidental. Similarly, the death of a railroad conductor from a gunshot wound, inflicted by a passenger whom he was trying to induce to vacate a toilet, may be found to be accidental, if at the time he did not know that the passenger was armed, and did not, and had no reason to, anticipate, in the light of all the circumstances, that he would be shot in pressing his demand, the rule being that, even where the insured is the aggressor, if he could not reasonably anticipate bodily injury resulting in death to himself at the hands of another, the beneficiary may recover as for an accidental death. So, it has been said that death and the blow causing death are accidental when, as to the insured, they were unforeseen, unexpected, and unusual, not taking place according to the usual course of things, and consequently, were accidental in the usual, natural, and popular meaning of the word. The killing of an unarmed person by one upon whom he is moving aggressively is by accident or accidental, if the insured did not know, and had no reason to believe, that his adversary was armed and intended to kill him upon such advance. * * * Similarly, an unarmed insured, who is shot while engaged in an altercation, is injured by 'external, violent and accidental means.' And death from a blow on the head from a broom during an altercation between unarmed men is by accidental means, where both the blow and the effect were sudden, unforeseen and unexpected. And a killing although a crime, which resulted from bad feeling, is, as between the insurer and the beneficiary, an accidental killing by violence, and within an accident policy, in the absence of any provision relieving the insurer of liability in such a case.''

And again the same authority says at the conclusion of said section: ''It is for the jury to determine whether or not death by being shot by another is an accident, where the evidence is conflicting as to whether or not

insured's own wrongful conduct produced his death, or he voluntarily and intentionally committed acts from which he foresaw, or should have foreseen, that death or injury might result.''

We think it unnecessary to discuss the assignments of error relating to the modification, and giving as modified certain instructions requested by appellant. What we have said with reference to the meaning of the word ''assault'' will furnish a guide for the court and counsel in instructing the jury on another trial.

For the error indicated, judgment will be reversed, and the cause remanded for a new trial.