AETNA LIFE INSURANCE COMPANY *v.* LEMAY.

4-9366                                                    236 S. W. 2d 85

Opinion delivered February 5, 1951.

*Owens, Ehrman & McHaney* and *John M. Lofton, Jr.,* for appellant.

*Pat Robinson,* for appellee.

ROBINSON, J.   This appeal is the result of a jury verdict for the plaintiff in a suit involving that part of an insurance policy providing for double indemnity in event of accidental death of the insured, John Clint Lemay. By its verdict the jury found that death was accidental within the meaning of the policy.

The sole issue here is whether there is substantial evidence to support the verdict. If there is such evidence

the case must be affirmed; otherwise, reversed. *The Mutual Life Insurance Company of New York* v. *Springer,* 193 Ark. 990, 104 S. W. 2d 195.

The evidence is viewed in the light most favorable to the appellee and we indulge all reasonable inferences in favor of the judgment. *Mutual Benefit Health & Accident Ass'n* v. *Basham,* 191 Ark. 679, 57 S. W. 2d 583.

The provision of the policy in issue provides: "If the death of the insured occurs before default in payment of premium and before the first anniversary of the date of this policy which follows the age of 70 years, and such death results directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental means within 90 days from the occurrence of such accident, and if such accident is evidenced by a visible contusion or wound on the exterior of the body (except in case of drowning and internal injuries revealed by an autopsy), and if such death does not result from suicide, while sane or insane, nor from military or naval service in time of war, nor from an aeronautic flight or submarine descent, nor directly or indirectly from disease in any form, then the Company will pay a sum equal to the sum described in this policy as the sum insured in addition thereto."

On the 30th day of May, 1948, the insured, John Clint Lemay, died as the result of a gunshot wound inflicted by Carroll Hamn, the Constable at Stamps, Arkansas. The injury being violent and external the presumption is that it was accidental and the burden is on the Insurance Company to show otherwise. *Metropolitan Cas. Ins. Co.* v. *Chambers,* 136 Ark. 84, 206 S. W. 46. However, such presumption is not conclusive and may be rebutted. *Gilman* v. *New York Life Insurance Co.,* 190 Ark. 379, 79 S. W. 2d 78, 97 A. L. R. 755; *Missouri Pacific Railroad Co.* v. *Forsee,* 181 Ark. 471, 26 S. W. 2d 108; *Missouri Pacific* v. *Hull,* 182 Ark. 873, 33 S. W. 2d 406.

The facts are substantially as follows:

Hamn is a man 69 years of age, is rather frail, weighing 135 pounds, and at the time of the killing had

just three days previously been released from the Veterans' Administration Hospital where he had been confined for 7 weeks. He has a service connected total disability from the First World War. Lemay had some real or imaginary grievance against Hamn by reason of Lemay having been charged with a misdemeanor. On the morning of the day of the killing Hamn and Lemay had both gone to the grocery store. Lemay was drinking and told Hamn that he, Hamn, had "butchered" him up. Hamn then saw Lemay was drinking and mad. Lemay "invited" him out, but Hamn told Lemay he would get out. Hamn left the store because he did not want to have any trouble with Lemay.

Hamn next saw Lemay that afternoon at Baker's Drug Store. He went in to get a "coke" and not long thereafter Lemay entered and told Hamn that he had come in there to beat him up; he grabbed Hamn by the collar and tie and attempted to strike him, but missed. Mr. Baker spoke up and said he didn't want any trouble in there and helped separate the two. The above facts as shown by the evidence stand uncontradicted.

Hamn then testified that after they were separated Lemay stepped off toward the showcase and Hamn stayed at the soda fountain, and shortly thereafter Lemay "came back at him like a hyena," grabbed and hit him. Hamn told Lemay to quit beating him and consider himself under arrest. Lemay replied: "I am not considering no arrest, you cannot arrest me."

"Q. Did you at any time warn him you would have to shoot him?

"A. I told him I would have to hurt him. I never did say anything about shooting him. I told him I would have to hurt him if he didn't quit beating on me."

Witness was physically unable to defend himself against Lemay. His hands being sore and swollen, he could not have hurt Lemay if he had hit him. There was no way to get out of the door; he could not get loose from Lemay.

"Q. Tell us about the shooting itself.

"A. I had to stop him some kind of way and that is why I pulled the gun. I never did get it off my hip. I just barely got it out of my scabbard." Witness was attempting to stop Lemay from beating him.

Morris Davis, the City Marshal at Stamps, testified that he heard Lemay make the threat that he "was going to kill Mr. Hamn."

Austin Brown was in the drug store at the time of the difficulty and when he looked Lemay was hitting Hamn and had knocked him over the soda fountain. He and Baker separated them. Hamn was in no position from which he could retreat. After the first separation another customer came in and the three separated the men again. There were three separate encounters. It was on the third encounter that Lemay was shot. Lemay had Hamn by the throat and was choking him down and Hamn pulled his gun and fired.

The sum and substance of the testimony of Seth Baker, Morris Davis, Austin Brown, and Carroll Hamn shows clearly that Lemay was the wrong-doer and the aggressor; he brought on the trouble himself, and his conduct and actions were calculated to bring about the very thing that did happen.

These witnesses, along with Lin Peavy and Joe Allen, who were called as witnesses by the appellee, were all the witnesses who testified in the case. We have carefully examined the testimony of Peavy and Allen and find that it cannot be classified as substantial evidence which would support a verdict.

Allen was not in the drug store when the trouble first started, but came in after the initial encounter had taken place, and helped separate the men when the next clash occurred, according to his testimony. Hamn stayed at the soda fountain and Lemay crossed over on the opposite side of the store. The last time he saw them they were near the middle of the store. He also testified that he heard Lemay call Hamn a "G. D. S. O. B." He did not actually see the shooting.

Lin Peavy was not in the store prior to the shooting. He testified that as he passed the drug store he saw the two men moving around. At that time they were within two or three feet of each other, and while he was looking the gun was fired; that Lemay was not armed.

It is our opinion that the evidence to the effect that Lemay was the aggressor and brought on the difficulty, and persisted to the point where Hamn shot him in self-defense, is not in substantial dispute, and that the verdict, as a matter of law, is without support.

The law in this State covering a situation of this kind is stated in *Price* v. *Business Men's Assurance Company of America,* 188 Ark. 637, 67 S. W. 2d 186. In that case Mr. Justice HUMPHREYS speaking for the Court said: "The general rule of law is that death resulting from bodily injuries effected solely through accidental means (where the claim is under an insurance policy) does not include death resulting from wounds received in an encounter provoked by the insured, or in which he was the aggressor, and from which he did not attempt to retire in good faith." See, also, *Metropolitan Cas. Ins. Co.* v. *Chambers, supra.*

Since the case appears to have been fully developed in the Circuit Court, it is our opinion that it should be reversed and dismissed.

It is so ordered.