LINCOLN INCOME LIFE INSURANCE COMPANY *v.*
ALEXANDER.

5-1911 328 S. W. 2d 266

Opinion delivered October 26, 1959.

64

*Bethell & Pearce* and *Lawson Cloninger,* for appellant.

*Sexton, Holland & Morgan,* for appellee.

JIM JOHNSON, Associate Justice. This appeal involves a suit to recover under a double indemnity clause in a life insurance policy.

Appellees, Elzo Alexander and Rosie Alexander, are the named beneficiaries in a life insurance policy issued by appellant, Lincoln Income Life Insurance Company, upon the life of Evard O'Leary Alexander, brother of Elzo Alexander. The policy provides for the payment of $1,000 in the event of death of Evard O'Leary Alexander and further provides for the payment of an additional $1,000 should the death of Evard O'Leary Alexander result from violent, external and accidental means.

The insured, Evard O'Leary Alexander, died on September 12, 1957. The cause of death was a pene-

trating stab wound in the abdomen inflicted upon him by one Lovely Lee during an encounter in front of the Nightingale Tavern in Kansas City, Missouri, on September 5, 1957.

Proof of loss was filed and appellant paid the appellees $1,000, the face amount of the policy, but declined to pay the double indemnity amount. Appellees filed this action to recover the sum of $1,000 under the double indemnity provision of the policy, plus the statutory twelve per cent penalty and attorneys' fee.

Answering, appellant denied that the death of the insured resulted from accidental cause, and alleged that the insured died as a result of his participation in an assault and as a result of a stab wound intentionally inflicted by another, claiming that either would exempt the appellant from liability for double indemnity under the terms of the policy.

Appellant admitted that the death of Alexander was from violent and external means. It undertook to establish that the death was not accidental, or that if accidental, the death came within one of the exclusions contained in the policy. To sustain this burden appellant offered the testimony of four persons. The testimony of these witnesses is summarized as follows:

Rosa Lea Harding, a 29-year-old unmarried colored female, was evidently a woman of the night. Her testimony established solely that she was in the Nightingale Tavern on the evening of the fatal occurrence, that Lee and Alexander were present, that both were ejected for loud talk, and that she saw Alexander immediately after the stabbing and that he had no weapon.

Carl Di Gerlamo testified only that he was an insurance agent and that he was in the Nightingale Tavern on business. Beyond this he professed no knowledge of the facts, except that he did not see a weapon on either man at any time.

Gurinder Abner, the bouncer in the Nightingale Tavern, testified that he escorted both men from the Tav-

ern because they were talking loud, but that both men were agreeable to leaving the establishment. That he walked between them to the door and that Lee preceded Alexander out the door because he, Abner, was between them until they reached the door. That he did not see any fight, but that he saw Alexander within one minute after Alexander left the Tavern and that at that time he had been stabbed and he did not have a weapon on him.

Lovely Lee, the admitted killer of the insured, admitted that he struck the fatal blow. Beyond that point his testimony is in conflict, not only with that of the other witnesses, but with his own testimony given at the time of his trial for the murder of Alexander. In fact, Lee was so evasive in giving answers that he refused even to concede that he was a colored man. Lee denied that either he or Alexander were ejected from the Nightingale Tavern. The testimony of Gurinder Abner and Rosa Lea Harding (witnesses for the defendant) squarely contradicts this. Lee claimed that he had left the Tavern and was sitting outside with his hand in his pocket when Alexander came out. The testimony of Gurinder Abner again squarely contradicts him for Abner testified that the two men left at the same time and that Alexander was outside the door less than a minute before returning stabbed. Lee here claimed that Alexander was coming at him with a knife. Yet he admitted that at his own trial for murder, where his life was at stake, his then story was that Alexander had his hand in his pocket. Portions of Lee's testimony are undisputed. It is undisputed that Alexander did not strike Lee; it is undisputed that Alexander did not say a word to Lee after leaving the Tavern and it is undisputed that Lee and Alexander did not agree to fight. Lee also testified that someone outside had yelled ''Look out'' and that there were 25 or 30 persons inside the Tavern.

The case was tried before a jury. A verdict was returned for the appellees. Judgment was entered for

appellees against appellant for the sum of $1,000, plus statutory damages of $120, attorney's fee of $500, and court costs, from which comes this appeal.

For reversal, appellant relies on four points. Point 4, relied on by appellant for reversal, will be discussed first. Appellant contends that: "The Court erred in giving to the jury Instruction No. 11 at the request of plaintiffs and over the objections of defendant." Instruction No. 11 is as follows:

"The killing of an unarmed person by one upon whom he is moving aggressively is by accident or accidental means if the unarmed person did not know and had no reason to believe that his adversary was armed and intended to kill him upon such advance. Thus, should you find that Alexander was moving aggressively upon Lee, but was unarmed, you are instructed that the death of Alexander was by accident or accidental means unless Alexander knew or had reason to believe that Lee was armed and intended to kill him."

The language in this instruction is taken from *Gilman* v. *New York Life Insurance Company*, 190 Ark. 379, 79 S. W. 2d 78. . This rule has been the law in Arkansas for more than 20 years. It has been cited with approval by other courts and treatise writers and is in accordance with the prevailing general rule. We find no error in the trial court's giving Instruction No. 11.

Appellant's point 1, relied on for reversal, contends that "The evidence is insufficient to support a finding that the insured died as a result of accidental injury."

It is undisputed that the death of Evard O'Leary Alexander was caused by a penetrating stab wound of the abdomen, and that the stab wound was caused from "violent and external means." This being so, a presumption of law arises that the death was accidental. *Gilman* v. *New York Life Insurance Company, supra.* The jury was so instructed, without objection from appellant, and in fact appellant recognized this presump-

tion and accepted the burden of proving that death was not caused by accidental means and claimed the privilege of opening and closing because of its assumption of the burden of proof.

Appellant introduced all of the evidence but the essential facts were in dispute. It was for the jury to decide which testimony it would accept and which it would reject and the weight to be assigned to each item of evidence and the credibility of the witnesses. *Missouri Pacific R.R. Co.* v. *Hancock,* 195 Ark. 414, 113 S. W. 2d 489.

Appellant's point 2 relied on for reversal contends that "The evidence is insufficient to support a finding that death of the insured did not result from his participation in an assault."

The policy of insurance sued upon contains an exclusion for "death resulting from . . . participation in a riot, assault, or felony." It is settled law in this jurisdiction that the character of assault contemplated by such words of exclusion is not a simple assault but it must have been of such severity as would have justified the assaultee in inflicting death or serious injury by way of self-defense. *Gilman* v. *New York Life Ins. Co., supra.* Also see: 26 A. L. R. 2d, beginning on page 406 where it is said:

"But most of the courts, in stating the conditions of the accident insurer's non-liability for injury or death to an insured in the course of an assault wrongfully committed upon another have indicated that in order to excuse the insurer, the insured's injury or death must have been a reasonably foreseeable, as well as a natural consequence of his wrongful acts."

Great weight is attached to the insured's ability to foresee the natural and probable consequences of his action. If the action of the insured is such that a reasonable person would conclude that danger of serious injury might result, recovery would be denied. If the action is such that the insured could not reasonably fore-

see the fatal consequences, recovery will be permitted. The testimony on this point in the case at bar was in irreconcilable conflict, hence a question for the jury.

Appellant's point 3 relied on for reversal contends that "The evidence is insufficient to support a finding that the death of the insured did not result from an injury intentionally inflicted by another. The general rule is that an exclusion for death resulting from injuries intentionally inflicted by another means that there must be an intention not only to commit the injury but that the fatal consequences will result therefrom. *Southern National Insurance Company* v. *Lofton,* 178 Ark. 839, 12 S. W. 2d 402.

Appleman, Insurance Law and Practice, Vol. 1, Sec. 483, states the rule:

"Under the principles of liberal construction, the courts have in many instances held that if the assailant did not intend to cause death  .  .  .  even though the assailant intentionally caused injury, recovery would not be denied."

This author cites cases from Florida, Kentucky, Louisiana, Oklahoma, West Virginia, and California, as well as the Arkansas rule to support this proposition. In the instant case, Lee, the appellant's star witness, told the jury that he did not intend to injure or kill the decedent at the moment of striking. The jury was justified in so believing and finding, since it was indicated that Lee was acquitted of the killing.

After a careful review of the record, we are convinced that there is substantial evidence to support the verdict of the jury. Finding no error, the judgment is affirmed.

We have decided that appellees' attorneys are entitled to a combined additional fee of $100. This is because the trial court, in allowing the attorneys' fees, made it plain that said amount did not include any attorneys' fees for an appeal to this Court.