692 F.2d 1164
 Betty J. COCKRELL, Individually and as Guardian of the
Persons and Estates of James Alfred Cockrell, Jr., and
Christina Lynn Cockrell, Minors; and Gary R. Burbank,
Administrator of the Estate of James A. Cockrell, deceased, Appellees,
v.
LIFE INSURANCE COMPANY OF GEORGIA, Appellant.
 No. 81-2082.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 11, 1982.
Decided Nov. 15, 1982.
 
 John W. Unger, Jr., Crumpler, O'Connor & Wynne, El Dorado, Ark., for Life Ins. Co. of Georgia.
 Robert C. Compton, Brown, Compton & Prewett, Ltd., El Dorado, Ark., for appellees.
 Before ROSS, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 Life Insurance Co. of Georgia (the insurer) appeals from a final judgment entered in the District Court for the Western District of Arkansas awarding appellees accidental death benefits, the statutory penalty for refusal to pay and attorney's fees. For reversal the insurer argues that the district court erred in (1) finding the death of the insured was accidental and (2) construing the policy language excluding accidental death benefits for intentionally inflicted wounds. For the reasons discussed below, we reverse and remand for further proceedings consistent with this opinion.
 
 
 2
 This case was tried on stipulated facts by the district court. The stipulated facts are, however, insufficient at several critical points. The insurer issued two life insurance policies to James A. Cockrell. Both policies were in effect at the time of Cockrell's death in April 1980. The first policy was issued in January 1973 and insured the lives of both Cockrell and his wife, appellee Betty Cockrell; it provided for $5,000 in life insurance benefits and for an additional $5,000 in accidental death benefits, subject to several exclusions. One of the exclusions in this policy provided that the accidental death benefits were not payable if death is "caused or contributed to, directly or indirectly, by ... gunshot or pistol wound unless unintentionally inflicted by a person other than the insured or insured wife." The second policy was issued in October 1976 and insured only James A. Cockrell; it provided for $15,000 in life insurance benefits and an additional $15,000 in accidental death benefits, subject to several exclusions. One of the exclusions in this policy provided that the accidental death benefits were not payable if death is "caused or contributed to, directly or indirectly, by ... gunshot or pistol wound unless unintentionally inflicted by a person other than the insured." Appellee Betty Cockrell was named as one of the beneficiaries in both policies.
 
 
 3
 On the evening of April 2, 1980, the Cockrells became involved in a heated argument, during which Cockrell struck his wife and threatened her and their two children with bodily harm. Cockrell left the family home and the police were called to come to the house. Just before the police arrived, Cockrell returned to the house. The parties' minor son warned his mother that his father was returning and handed her a loaded rifle. When Cockrell entered the house, his wife intentionally fired two shots. One shot hit Cockrell in the abdomen and the other in the neck. One or both wounds were fatal. The police arrived shortly thereafter and took Betty Cockrell into custody pending an investigation into the death of her husband. Betty Cockrell was later released on bond. The state prosecuting attorney did not file any charges against her. According to a letter dated December 24, 1980, the prosecuting attorney was of the opinion that the killing was either justified (in self defense) or the result of temporary mental disease.
 
 
 4
 Cockrell died intestate and appellee Gary R. Burbank was appointed administrator. On May 9, 1980, Betty Cockrell and Burbank filed with the insurer a proof of death and a claim for benefits under the two life insurance policies. The insurer paid the principal amounts due under the two policies, a total of $20,000, but denied all claims for accidental death benefits on the grounds that the death was not accidental and was the result of intentionally inflicted wounds. Appellees then filed an action in state court to recover the accidental death benefits. The insurer removed the action to federal district court. After noting the insufficiency of the stipulated facts, the district court in making its findings relied upon the presumption of accidental death and the rule of construction which resolves ambiguities in policy language in favor of the insured. The district court found that the death of the insured was accidental and was not the result of intentionally inflicted wounds. Cockrell v. Life Insurance Co., No. 81-1014 (W.D.Ark. Sept. 10, 1981). The district court awarded appellees accidental death benefits under the two policies and the statutory penalty for refusal to pay and reasonable attorney's fees, a total amount of $27,400. This appeal followed.
 
 
 5
 We will not overturn the decision of the district court unless we determine that the district court's findings are clearly erroneous. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if it proceeds from an erroneous conception of the applicable law, or if, upon consideration of the record as a whole, we are left with the firm and definite conviction that a mistake has been made. Fed.R.Civ.P. 52(a); e.g., Southern Illinois Stone Co. v. Universal Engineering Corp., 592 F.2d 446, 451 (8th Cir.1979).
 
 
 6
 The insurer first argues that the finding that the death of the insured was accidental is clearly erroneous. The insurer admits that the insured died as a result of injuries. Under Arkansas law proof of death of an insured from injuries received by him or her raises a presumption of accidental death within the meaning of an insurance clause insuring against death by external, violent, and accidental means, and the presumption of accidental death will continue until overcome by affirmative proof to the contrary on the part of the insurer. Mutual of Omaha v. George, 245 Ark. 670, 434 S.W.2d 307, 309 (1968) (George), citing Metropolitan Casualty Insurance Co. v. Chambers, 136 Ark. 84, 206 S.W. 64, 67 (1918); Lincoln Income Life Insurance Co. v. Alexander, 231 Ark. 63, 328 S.W.2d 266, 269 (1959) (Alexander ). The insurer argues, however, that it rebutted the presumption of accidental death because the stipulated facts and the reasonable inferences drawn therefrom established, by a preponderance of the evidence, that either the insured provoked the encounter and was killed by his wife in self defense, see Aetna Life Insurance Co. v. Lemay, 218 Ark. 328, 236 S.W.2d 85, 87 (1951) (Lemay ); Gilman v. New York Life Insurance Co., 190 Ark. 379, 79 S.W.2d 78, 79-80 (1935) (Gilman ), or the insured provoked the encounter and failed to withdraw in good faith, cf. Price v. Business Men's Assurance Co., 188 Ark. 637, 67 S.W.2d 186, 186-87 (1934) (Price ) (insured engaged in the commission of robbery who, when discovered in the act by the police, attempts to escape by shooting his way out, necessarily takes his chances on being killed; death under such circumstances should have been reasonably anticipated by insured; death held not by accidental means).
 
 
 7
 The district court began its analysis by noting that the insured's death as a result of injuries raised a presumption of accidental death and that the stipulated facts were insufficient to provide a clear understanding of the events of April 2, 1980. The district court then noted that under Arkansas law the killing of an unarmed person by one upon whom he is moving aggressively is by accident or accidental means if the unarmed person did not know and had no reason to believe that his adversary was armed and intended to kill him upon such advance. See George, 434 S.W.2d at 310; Alexander, 328 S.W.2d at 269-70; Gilman, 79 S.W.2d at 80. The district court could not determine on the basis of the stipulated facts whether or not the insured knew or reasonably should have known that his wife was armed and intended to kill him, and therefore relied upon the presumption of accidental death in making its finding that the insured's death was accidental.
 
 
 8
 We agree with the district court's analysis of the applicable law and cannot say that the finding of accidental death is clearly erroneous. We agree with the insurer that, as a general rule, death by accident or accidental means, for purposes of such insurance, does not include death resulting from injuries received in an encounter provoked by the insured or in which the insured was the aggressor and failed to withdraw in good faith. See Lemay, 236 S.W.2d at 87; Price, 67 S.W.2d at 186. However, death may be accidental, even though the insured was the aggressor, if the insured withdrew from the encounter or if the insured could not reasonably have anticipated that the adversary would respond in such a manner as to seriously injure or kill the insured. See George, 434 S.W.2d at 310; Alexander, 328 S.W.2d at 269-70; Gilman, 79 S.W.2d at 80. See generally 1B J. Appleman & J. Appleman, Insurance Law and Practice Secs. 459-462 (rev. ed. 1981) (hereinafter Appleman); Annot., 49 A.L.R.3d 673 (1973). The focus is upon the insured.
 
 
 9
 Great weight is attached to the insured's ability to foresee the natural and probable consequences of his action. If the action of the insured is such that a reasonable person would conclude that danger of serious injury might result, recovery [for accidental death] would be denied. If the action is such that the insured could not reasonably foresee the fatal consequences, recovery will be permitted.
 
 
 10
 Alexander, 328 S.W.2d at 270. Moreover, for the purposes of determining only whether the death of the insured was accidental, the injury resulting in the death of the insured can be intentionally inflicted by the adversary of the insured and will not bar recovery as long as serious injury or death could not have been reasonably expected by the insured. See Southern National Insurance Co. v. Lofton, 178 Ark. 839, 12 S.W.2d 402, 402 (1929); Mutual Benefit Health & Accident Ass'n v. Tilley, 176 Ark. 525, 3 S.W.2d 320, 321-22 (1928). See generally 1B Appleman Sec. 456, at 266-70.
 
 
 11
 Here, even assuming that the insured husband provoked the argument and was the aggressor because he struck his wife and threatened her and their children with bodily harm and that he failed to withdraw from the encounter in good faith, the stipulated facts are inconclusive as to whether the insured knew or reasonably should have anticipated that, when he approached the house, his wife would be armed and intended to seriously injure or kill him. Nor could the district court have reasonably inferred from the stipulated facts that the insured knew or reasonably should have expected that his wife would shoot him as he approached the house. We hold that the district court did not erroneously rely on the presumption of accidental death in finding that the death of the insured was accidental. The insurer failed to establish by a preponderance of the evidence that the insured knew or reasonably should have anticipated that, as the natural and foreseeable consequence of the violent argument, his wife would respond by shooting him. Compare George, 434 S.W.2d at 310-11, and Alexander, 328 S.W.2d at 269-70, with Lemay, 236 S.W.2d at 87, and Price, 67 S.W.2d at 186. See also John Hancock Mutual Life Insurance Co. v. Dutton, 585 F.2d 1289, 1290-91 (5th Cir.1978) (applying Georgia law); Estate of Wade v. Continental Insurance Co., 514 F.2d 304, 306-08 (8th Cir.1975) (applying Iowa law).
 
 
 12
 The insurer next argues that, even assuming that the death of the insured was accidental, the district court erred in construing the policy exclusions for intentionally inflicted wounds. The insurer argues that recovery of accidental death benefits is barred by the policy exclusions for intentionally inflicted wounds because it was stipulated that Betty Cockrell intentionally fired the shots that fatally wounded the insured. The insurer also argues that the terms of the exclusion bar recovery of accidental death benefits under the $5,000 life insurance policy.
 
 
 13
 The district court determined that although it was stipulated that Betty Cockrell intentionally fired the shots, it was unclear whether she fired the shots as a warning or whether she intentionally wounded the insured. The district court reviewed the policy exclusions and found the language was confusing and ambiguous. In finding that Betty Cockrell did not intentionally wound the insured, the district court relied on the presumption of accidental death and the rule of construction that ambiguous policy language should be construed in favor of the insured. Because we hold that the district court improperly applied the rule of construction, we reverse and remand for further findings.
 
 
 14
 As a preliminary matter, we note that "[a]n insurance contract is to be construed strictly against the insurer; but where the language is unambiguous, and only one reasonable interpretation is possible, it is the duty of the courts to give effect to the plain wording of the policy." Ingram v. Life Insurance Co., 234 Ark. 771, 354 S.W.2d 549, 550 (1962).
 
 
 15
 The exclusion at issue in the $5,000 life insurance policy provides that accidental death benefits "will not be payable if death is caused or contributed to, directly or indirectly, by ... gunshot or pistol wound unless unintentionally inflicted by a person other than the insured or insured wife." We agree with the insurer that the plain meaning of this exclusion bars any recovery of accidental death benefits under the facts in the present case because the gunshot wound was inflicted by the insured wife, Betty Cockrell. The first part of the exclusion creates a general category of cases in which no recovery is allowed, that is, for death from gunshot or pistol wounds. The second part of the exclusion creates an exception to the exclusion for death from gunshot or pistol wounds where the wound is unintentionally inflicted by a person other than the insured or insured wife. We conclude that this exclusion bars recovery of accidental death benefits where death results from gunshot or pistol wound inflicted by the insured wife, whether unintentionally or intentionally inflicted. We therefore reverse the judgment of the district court awarding accidental death benefits under the $5,000 life insurance policy.
 
 
 16
 The exclusion at issue in the $15,000 life insurance policy provides that accidental death benefits "will not be payable if death is caused or contributed to, directly or indirectly, by ... gunshot or pistol wound unless unintentionally inflicted by a person other than the insured." The plain meaning of this exclusion bars recovery of accidental death benefits where the death of the insured results from intentionally inflicted gunshot or pistol wounds. (It also bars recovery for death resulting from unintentional gunshot or pistol wounds inflicted by the insured.) This language is not ambiguous. In the absence of ambiguity, the district court should not have relied upon the rule of construction that ambiguous contract language should be construed against the insurer and in favor of the insured. E.g., Peacock & Peacock, Inc. v. Stuyvesant Insurance Co., 332 F.2d 499, 504 (8th Cir.1964).
 
 
 17
 The insurer also argues that the district court erred in drawing a distinction between "intentionally inflicted wounds" and "intentional shots." The insurer argues that because it was stipulated that Betty Cockrell intentionally shot the insured, any recovery was barred by the exclusion for intentionally inflicted gunshot or pistol wounds. We disagree. Under Arkansas law the insurer has the burden of proving, by a preponderance of the evidence, an affirmative defense based upon an exception in the policy. Ingram Life Insurance Co., 354 S.W.2d at 551 (similar policy exclusion for intentionally inflicted injuries). See generally 1B Appleman Sec. 452, at 250; 10 G. Couch, Cyclopedia of Insurance Law Sec. 41:682 (2d rev. ed. 1982) (hereinafter Couch on Insurance 2d (rev. ed.)). In addition, "[t]he general rule is that an exclusion for death resulting from injuries intentionally inflicted by another means that there must be an intention not only to commit the injury but that the fatal consequences will result therefrom." Alexander, 328 S.W.2d at 270, citing Southern National Insurance Co. v. Lofton, 12 S.W.2d at 402; see Ingram v. Life Insurance Co., 354 S.W.2d at 551. Cf. Talley v. MFA Mutual Insurance Co., 273 Ark. 269, 620 S.W.2d 260, 262-63 (1981) (discussion about whether insurance policy included coverage for the unintended results of intentional or voluntary acts; court declines to adopt tort concept that one intends the natural and foreseeable consequences of one's acts so as to bar recovery for unintended results). See generally 1B Appleman Sec. 453, at 253-56; 10 Couch on Insurance 2d (rev. ed.) Sec. 41:687.
 
 
 18
 Thus, the dispositive question is whether Betty Cockrell intentionally shot the insured with the intent to kill him. See Ingram v. Life Insurance Co., 354 S.W.2d at 551 (evidence that assailant was shooting in insured's direction and hit insured and that third party "guessed" the shooting was intentional held insufficient for directed verdict on intentionally inflicted wound exclusion); Alexander, 328 S.W.2d at 270 (assailant intentionally stabbed insured but did not intend to kill insured; recovery not barred by intentionally inflicted injury exclusion); Southern National Insurance Co. v. Lofton, 12 S.W.2d at 402 (third party intentionally injured insured but did not intend to kill insured; recovery not barred by intentionally inflicted injury exclusion). It was stipulated only that Betty Cockrell intentionally fired the shots. Because the district court's finding that Betty Cockrell did not intentionally wound the insured was based in part upon improper consideration of the rule of construction of ambiguous policy language and does not answer the dispositive question, we reverse and remand to the district court for further findings. The district court, in its discretion, may take additional evidence from either or both parties on remand. The district court should carefully review and weigh the stipulated facts and all reasonable inferences to be drawn therefrom. The district court should bear in mind that although there is a presumption that the injury was unintentionally inflicted, the presumption may be rebutted if the insurer proves by a preponderance of the evidence that Betty Cockrell intentionally shot the insured with the intent to kill him. However, if the district court should determine that it was equally likely that Betty Cockrell intentionally shot the insured but did not intend to kill him, as it was that she intentionally shot the insured with the intent to kill him, or that she unintentionally shot the insured, then the presumption would favor recovery under the policy.
 
 
 19
 As a final matter, we note that, in the absence of an exclusion for intentionally inflicted injuries, public policy would have required an inquiry into whether Betty Cockrell intentionally shot the insured with the intent to kill him. Betty Cockrell is one of the named beneficiaries under both policies. Under Arkansas law, a beneficiary who intentionally and unlawfully kills the insured cannot recover the insurance proceeds; the proceeds become an asset of the estate of the insured. E.g., York v. Hampton, 229 Ark. 301, 314 S.W.2d 480, 481 (1958); Horn v. Cole, 203 Ark. 361, 156 S.W.2d 787, 790 (1941); Mutual Benefit Health & Accident Ass'n v. Tilley, 3 S.W.2d at 322. In the present case, however, the policies expressly and specifically exclude payment of accidental death benefits for death resulting from intentionally inflicted wounds, thus precluding any liability under the policies.
 
 
 20
 Accordingly, the judgment of the district court is reversed and remanded for further proceedings consistent with this opinion.
 
 
 21
 FLOYD R. GIBSON, Senior Circuit Judge, concurring in part and dissenting in part.
 
 
 22
 I concur in the reversal of the judgment of the district court as to both the $5,000 policy and the $15,000 policy. However, I believe that a remand is unnecessary for the $15,000 policy as well as the $5,000 policy, and therefore I dissent in part.
 
 
 23
 Ordinarily I would consider a remand appropriate where the district court has incorrectly applied the law. However, in this case the inference that the fatal shooting was intentional is so great that no remand is necessary. Even though the inferences drawn from stipulated facts are questions of fact for the district court, Martin v. United States, 586 F.2d 1206, 1211 (8th Cir.1978), Anderson v. Property Developers, Inc., 555 F.2d 648, 653, n. 4 (8th Cir.1977), in this case the only reasonable inference from the stipulated facts is that Betty Cockrell intended the fatal consequences of her actions. Although the facts are not without ambiguity,* the stipulation is that Betty Cockrell intentionally fired two shots at fairly close range. There was no evidence that she said anything to suggest that the shots were intended as a warning. The fact that she intentionally fired a second shot after the first one had struck her husband suggests that she was not firing the gun as a warning. The likelihood that Betty Cockrell did not intend to kill her husband is so remote that a remand is unnecessary.
 
 
 24
 Furthermore, a finding by the district court on remand that the killing was unintentional would be inconsistent with the district court's conclusion that the death was accidental. The district court's conclusion that the death was "accidental" is based on the definition of that word found in Mutual of Omaha v. George, 245 Ark. 670, 434 S.W.2d 307, 310 (1968), and Lincoln Income Life Insurance Co. v. Alexander, 231 Ark. 63, 328 S.W.2d 266, 269 (1959): "The killing of an unarmed person by one upon whom he is moving aggressively is by accident or accidental means if the unarmed person did not know and had no reason to believe that his adversary was armed and intended to kill him upon such advance." (Emphasis added.) Only under the definition of "accidental" in these cases could one reasonably call Cockrell's death "accidental." Because the district court relied on these cases, Cockrell v. Life Insurance Co. of Georgia, No. 81-1014 mem. op. at 5 (W.D.Ark. Sept. 10, 1981), it could have concluded that the death was "accidental" only if Betty Cockrell intended to kill her husband. Therefore, the district court under this factual situation could not consistently conclude the death was accidental and that the killing was unintentional.
 
 
 25
 Because the district court could not reasonably conclude that Betty Cockrell unintentionally killed her husband, I would not remand the case, but reverse outright.
 
 
 
 *
 The stipulation does not say where Betty Cockrell was located in the house when she fired the rifle, how close she was to her husband, or whether the shots hit Cockrell directly or ricocheted